1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2      Including Professional Corporations
   NEIL A.F. POPOVIĆ, Cal Bar No. 132403
3  JULIA C. ANDERSON, Cal Bar No. 353164
   Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
   Telephone:    415.434.9100
5  Facsimile:    415.434.3947
   E mail        npopovic@sheppardmullin.com
6                juanderson@sheppardmullin.com

7  Attorneys for Defendant Cloudflare, Inc.

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 | EUGENIU TURUTA and RADU TURUTA,          | Case No.  3:24-cv-04244

12 |              Plaintiffs,                  | [San Francisco Superior Court Case No. CGC-24-615196]

13 |      v.                                   | **DEFENDANT CLOUDFLARE INC.'S**

14 | CLOUDFLARE, INC., a Delaware             | **NOTICE OF REMOVAL OF ACTION**
   | corporation, and DOES 1 through 30,      | **PURSUANT TO 28 U.S.C §§ 1332, 1441,**
15 | inclusive,                               | **1446**

16 |              Defendants.                  | Complaint Filed:  June 6, 2024
   |                                           | Trial Date:  None Set
17
   |                                           | [*Filed concurrently with Civil Cover Sheet and*
18 |                                           | *Notice of Interested Parties*]

19

20

21

22

23

24

25

26

27

28

-1-

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Cloudflare, Inc. ("Cloudflare") hereby removes to this Court the state court action titled *Eugeniu Turuta and Radu Turuta v. Cloudflare, Inc., et al.*, San Francisco Superior Court Case No. CGC-24-615196, filed by Plaintiffs Eugeniu Turuta and Radu Turuta ("Plaintiffs").  This Court has diversity jurisdiction over this action because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## BACKGROUND AND PLEADINGS

1.      On June 4, 2024, Plaintiffs filed this lawsuit and their Complaint against Cloudflare, Inc., ("Defendant"), and Does 1 through 30 in the California Superior Court for the County of San Francisco.  A copy of the Complaint, including Exhibits A and B thereto, is attached hereto as **Exhibit 1**.

## TIMELINESS OF REMOVAL

2.      The first date upon which Defendant received a copy of the Complaint was June 13, 2024, when the Defendant was served by personal service with a copy of the Complaint and a summons from the above referenced state court.  A copy of proof of service of summons on Defendant is attached hereto as **Exhibit 2**.

3.      Pursuant to 28 U.S.C. § 1446(b), Defendant files this Notice of Removal within 30 days of service of the Summons and Complaint.  *See Murphy Brothers, Inc. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999).  Defendant has therefore timely removed this action. *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011) ("each defendant is entitled to thirty days to exercise his removal rights after being served").

## JURISDICTION

4.      This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332 and is one which may be removed to this Court by Defendant pursuant to 28 U.S.C. § 1441(a) in that this is a civil action between citizens of a foreign country and a corporation

Case No. _____
NOTICE OF REMOVAL

domiciled in a State, and the amount in controversy exceeds the sum of $75,000 exclusive of interests and costs. *See Lively v. Wild Oats Markets, Inc*., 456 F.3d 933, 940, 942 (9th Cir. 2006) ("the forum defendant rule embodied in § 1441(b) is a procedural requirement, and thus a violation of this rule constitutes a waivable non-jurisdictional defect subject to the 30-day time limit imposed by § 1447(c)."). Plaintiffs seek recognition of a foreign-country money judgment for the sum of €1,276,864.00 in damages, 25,100 MDL for trial court costs, and 18,825 MDL for costs of the appeal. (Complaint at p. 3.)

5.      Complete diversity of citizenship exists in that, on information and belief, Plaintiffs are citizens of Moldova, and Defendant corporation is domiciled in Delaware. (Complaint at p. 1.) There are no unserved defendants, and all named defendants join in this Notice of Removal. Defendant is not required to investigate the identity of unnamed Doe defendants or to obtain their consent for removal. *See Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441(a).

### NOTICE TO PLAINTIFFS AND THE SUPERIOR COURT

6.      In compliance with 28 U.S.C. § 1446(d), Defendant will serve written notice of the filing of this Notice of Removal on all parties and will also file and serve appropriate notice with the Superior Court of California in and for San Francisco.

### CONCLUSION

7.      For the foregoing reasons, this Court has jurisdiction and Defendant requests this Court proceed with this matter as if Plaintiffs had originally filed their complaint in the United States District Court for the Northern District of California.

Case No. _____

NOTICE OF REMOVAL

Dated:  July 15, 2024

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
/s/ Neil A.F. Popović
NEIL A.F. POPOVIĆ
JULIA C. ANDERSON

Attorneys for Defendant Cloudflare, Inc.

Case No. _____

NOTICE OF REMOVAL

SMRH:4860-9454-8688.1

# EXHIBIT 1

**The Law Offices of Michael Martinovsky, P.C.**
MICHAEL MARTINOVSKY, ESQ. (SBN 242594)
1925 Francisco Blvd E., Ste. 17
San Rafael, CA 94901
Phone: 415-230-5360
Fax: 415-230-5361
Email: michael@martinovskylaw.com

Attorney for Plaintiffs
EUGENIU TURUTA and RADU TURUTA

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**06/04/2024**
**Clerk of the Court**
BY: SHENEQUA GLADNEY
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISO

| | |
|---|---|
| EUGENIU TURUTA and RADU TURUTA, <br><br> Plaintiffs, <br> v. <br><br> CLOUDFLARE, INC, a Delaware corporation, and DOES 1 through 30, inclusive, <br><br> Defendants. | CASE NO.   **CGC-24-615196** <br><br> COMPLAINT FOR RECOGNITION OF FOREIGN COUNTRY MONEY JUDGMENT |

Plaintiffs EUGENIU TURUTA and RADU TURUTA (hereafter, collectively, "Plaintiffs") complain of Defendant CLOUDFLARE, INC., a Delaware corporation (hereafter "Defendant CLOUDFLARE"), and for cause of action allege:

1.      Plaintiffs are a foreign country money judgment creditor of Defendant CLOUDFLARE and bring this action to recover unpaid sums on a foreign country money judgment.

2.      Defendant CLOUDFLARE is a foreign corporation organized and existing under the laws of the State of Delaware and is authorized to do business, and is doing business, in the State of California, with a principal place of business in California located at 101 Townsend Street, San Francisco, California.

3.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein

1

as DOES 1 through 30, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries herein alleged were proximately caused by the negligence of these Defendants.

4.      Plaintiffs are informed and believe and thereon allege that each Defendant is jointly and severally responsible for the occurrences herein alleged and that Plaintiffs' injuries herein alleged were proximately caused by the aforementioned Defendants.

5.      Venue is proper in this court because Defendant CLOUDFLARE has a principal place of business situated in the City and County of San Francisco.

6.      Upon information and belief, Defendants in this action were and are the agents, authorized representatives, joint venturers, partners, and/or alter egos of one another, and in doing the acts alleged in this complaint, did so jointly and for a common purpose, within the course and scope of his, her, or its authority as such agent, representative, joint venturer, partner, and/or alter ego, with the knowledge, consent, permission, and ratification of each other.

7.      At all times relevant hereto Plaintiff EUGENIU TURUTA was the author of and Plaintiff RADU TURUTA was the copyright holder of a work (book) commonly known as "5000 Integrated Circuits Power Audio Amplifiers" 2008 edition (hereinafter "the Book").

8.      At all times relevant hereto Defendants CLOUDFLARE and DOES 1 through 30, and each of them, were the responsible company for the website https://doku.pub.

9.      At all times relevant hereto Defendants CLOUDFLARE and DOES 1 through 30, and each of them, engaged in infringement of Plaintiffs', collectively and/or individually, patrimonial rights and/or copyright rights, including but not limited by allowing the distribution of the Book and by receiving remuneration therefor, all related to the website https://doku.pub.

10.      On or about November 3, 2020, Plaintiffs commenced a civil action in the Chisinau Court/Centre headquarters, Chisinau Municipality, Republic of Moldova (hereafter "Moldova Trial Court Action"), against Defendant CLOUDFLARE and DOES 1 through 30, and

2

each of them, for money damages arising out of copyright infringement and exploitation of work related to the Book.

11.     Defendant CLOUDFLARE was legally served with summons, together with the legal aid application, sent to the United States of America in accordance with the provisions of the Hague Convention of November 15, 1965, on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, ratified February 17, 2012 by the decision of Parliament of Republic of Moldova.

12.     Plaintiffs' case in the Moldova Trial Court Action was dismissed by that Court, and Plaintiffs thereafter timely appealed the matter to the Chisinau Court, Centru Office, Republic of Moldova (hereafter "Chisinau Appeal Court").

13.     On June 29, 2022, the Chisinau Appeal Court, after considering the evidence on appeal, issued a Final Decision in favor of Plaintiffs. Plaintiffs were awarded the sum of 1,276,864.00 EUR in damages, 25,100 MDL for trial court costs of the Moldova Trial Court Action, and 18,825 MDL for costs of the appeal in the Chisinau Appeal Court.  A true and correct copy of the decision of the Chisinau Appeal Court is attached hereto as **Exhibit A** and incorporated herein by this reference (English translation commencing @ pp 24 of 41).

14.     Plaintiffs now hold a final and conclusive judgment of the Chisinau Appeal Court, which remains unpaid and is due and owing.

15.     The Executive Title of the Chisinau Court, Centru Office, Court of Appeal, states the date that the Chisinau Appeal Court decision became final and irreversible is June 28, 2023. A true and correct copy of the Executive Title, the equivalent of a writ of execution, issued by the Chisinau Appeal Court is attached hereto as **Exhibit B** and incorporated herein by this reference (English translation @ p 4 of 4).

Wherefore, Plaintiffs pray:

1.     That the judgment of Chisinau Appeal Court be recognized as a valid judgment in favor of Plaintiffs and against Defendants;

2.     That the Chisinau Appeal Court judgment be entered as a California judgment in

3

COMPLAINT FOR RECOGNITION OF
FOREIGN COUNTRY MONEY JUDGMENT

favor of Plaintiffs and against Defendants;

   3. That Plaintiffs recover their costs of suit;

   4. That Plaintiffs recover interest as allowed by law; and

   5. That Plaintiffs recover such other and further relief as the Court deems just and proper.

Dated: May 28, 2024    The Law Offices of Michael Martinovsky, P.C.


         *Michael Martinovsky*
         MICHAEL MARTINOVSKY
         Attorney for Plaintiffs
         EUGENIU TURUTA and RADU TURUTA

4

COMPLAINT FOR RECOGNITION OF
FOREIGN COUNTRY MONEY JUDGMENT

# Exhibit A

Dosarul nr. 2a-3408/22 (dosar electronic 2-20137649-02-2a-24082022)
*Judecătoria Chişinău, judecător Eugenia Culinca*

# DECIZIE

mun. Chişinău                                                     29 iunie 2023

Colegiul civil, comercial
şi de contencios administrativ al Curţii de Apel Chişinău
Preşedintele şedinţei, judecător            Ana Panov
Judecătorii                           Marina Anton şi Vitalie Cotorobai
Grefier                                       Zoia Pleşca

examinând, în şedinţă de judecată publică, apelurile declarate de Turuta Eugeniu şi Turuta Radu, împotriva hotărârii Judecătoriei Chişinău /sediul Centru/ din 9 iunie 2022, pronunţată în cadrul cauzei civile intentată la cererea de chemare în judecată înaintată de Turuta Eugeniu şi Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor, prin care acţiunea a fost respinsă, -

### c o n s t a t ă :

La data de 3 noiembrie 2020, reclamanţii Turuta Eugeniu şi Turuta Radu s-au adresat cu cerere de chemare în judecată către pârâtul Cloudflare INC, solicitând să fie constatată încălcarea drepturilor patrimoniale de autor ale autorului Turuta Eugeniu şi titularului de drepturi de autor Turuta Radu la valorificarea operei (cărţii) „5000 integrated circuits power audio amplifiers" 2008 edition; prin intermediul site-ului https://doku.pub, responsabil compania Cloudflare INC; reieşind din mărimea remuneraţiei de autor (preţul de vânzare) pentru fiecare exemplar de carte (operă), dreptul de autor asupra căreia se încalcă şi de numărul de valorificări ilegale, în conformitate cu art. 63 alin. (2) lit. b) al Legii 139 din 02.07.2010, pentru încălcarea drepturilor patrimoniale de autor ale autorului Turuta Eugeniu şi titularului de drepturi de autor Turuta Radu (dreptul exclusiv la valorificarea operei, inclusiv prin reproducere, import, distribuire şi punere la dispoziţie în regim interactiv), să fie încasat din contul companiei Cloudflare INC în beneficiul autorului Turuta Eugeniu şi titularului de drepturi de autor Turuta Radu venitul ratat suportat: pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 64625 distribuiri x 16 euro = 1034000 euro.

În motivarea cererii de chemare în judecată reclamantul Turuta Eugeniu a indicat, că este autor al mai multor cărţi din domeniul informării despre componentele electronice semiconductoare, în special a cărţilor: „5000 integrated circuits - power audio amplifiers", 2008 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2010 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2011 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2014 edition. Cărţile (operele) în cauză au fost create de către Turuta Eugeniu pe parcursul mai multor ani şi publicate (aduse la cunoştinţa publicului, puse în vânzare şi valorificate) prin site-ul http://www.turuta.md. Prin contractul de autor din 15 februarie 2008 Turuta Eugeniu a transmis către Radu Turuta prin licenţă neexclusivă drepturile sale patrimoniale de autor asupra operei (cărţii) „5000 integrated circuits - power audio amplifiers", 2008 edition în limitele prevăzute în contract. Astfel, din momentul semnării contractului de autor Turuta Radu este titular de drepturi neexclusive de autor asupra cărţii menţionate.

1

Susține reclamantul Turuta Eugeniu, că, navigând prin Internet a constatat, că pe site-ul https://doku.pub (adresa web https://doku.pub/documents/5000-integrated-circuits-power-audio- amplifiers-data-bookpdf-5lw299zr4elj) era valorificată (pusă la dispoziția publicului în regim interactiv, distribuită și reprodusă) cartea „5000 integrated circuits - power audio amplifiers", 2008 edition, fără a exista acordul său în calitate de autor. De asemenea, a constatat reclamantul, că pe site-urile https://load-knigi.org și http://radiomaster.com.ua (adresele web https://load-knigi.org/17062-markirovka-radiodetaley-sbornik-knig.html și http.V/radiomaster.corn.ua/9133-active-smd-semiconductor-components-marking-codes.html) erau valorificate (puse la dispoziția publicului în regim interactiv, distribuite și reproduse) cărțile „SMD codes. Active SMD Semiconductor Components Marking Codes", 2010 edition, „SMD codes. Active SMD Semiconductor Components Marking Codes", 2011 edition și „SMD codes. Active SMD Semiconductor Components Marking Codes", 2014 edition, fără a exista acordul său în calitate de autor. Transmisia de date a site-urilor https://doku.pub, https://load-knigi.org și http://radiomaster.com.ua este asigurată (realizată) de către compania pârâtă Cloudflare INC.

Invocă reclamantul Turuta Eugeniu, că potrivit art. 66 alin. (1) lit. a) al Legii nr.139 din 02.07.2010 privind dreptul de autor și drepturile conexe (încălcarea drepturilor de autor și a drepturilor conexe prin intermediul rețelelor de calculatoare), „Persoana fizică sau juridică care acordă servicii de hosting și/sau transmisii de date (internet/intranet), inclusiv internet-provider, se consideră complice atunci când contribuie nemijlocit la încălcarea dreptului de autor și/sau a drepturilor conexe și poartă răspundere pentru încălcarea acestor drepturi în următoarele cazuri: a) dacă, având posibilitate tehnică să blocheze, să restricționeze accesul și/sau să șteargă în timp oportun obiectele ce sunt publicate și/sau utilizate cu încălcarea dreptului de autor și/sau a drepturilor conexe și fiind înștiințată de titularul de drepturi respective sau de reprezentanții săi (cu indicarea obiectului concret) despre încălcarea în cauză, nu a executat cerințele titularului dreptului de autor și/sau al drepturilor conexe privind blocarea, restricționarea accesului și/sau ștergerea obiectelor indicate".

Afirmă reclamantul, că în conformitate cu art. 66 alin. (1) lit. a al Legii nr.139 din 03.07.2010, exercitând dreptul la protecția drepturilor sale de autor, la data de 11 august 2020 a completat și expediat companiei pârâte Cloudflare INC formularele de notificare referitor la încălcarea drepturilor de autor, disponibile pe site-ul https://www.cloudflare.com/abuse/form (deoarece adresa de e-mail pentru notificări referitor la încălcarea drepturilor de autor nu este disponibilă pe site), cu informarea despre încălcarea drepturilor sale de autor pe site-urile https://doku.pub, https://load-knigi.org și http://radiomaster.com.ua (adresele web https://doku.pub/documents/5000-integrated-circuits-power-audio-amplifiers-data-bookpdf- 5lw299zr4elj,https://load-knigi.org/17062-markirovka-radiodetaley-sbornik-knig. html și http://radiomaster.com.ua/9133-active-smd-semiconductor-components-marking-codes.html) și cerința de a înceta valorificarea ilegală a operelor protejate prin Legea dreptului de autor. La aceeași dată, - 11 august 2020 reclamantul a primit prin e-mail un răspuns din trei secțiuni distincte, prin care compania pârâtă Cloudflare INC a confirmat recepționarea notificărilor, a informat că nu este prestator de servicii de hosting pentru site-urile menționate și că va informa clienții săi (proprietarii site-urilor https://doku.pub. https://load-knigi.org și http://radiomaster.com.ua) despre încălcarea drepturilor de autor.

Mai declară reclamantul, că la data de 31 octombrie 2020 (peste 2, 5 luni după comunicarea către compania pârâtă referitor la încălcarea drepturilor de autor) a accesat din nou site-urile https://doku.pub, https://load-knigi.org și http://radiomaster.com.ua (

2

https://doku.pub/documents/5000-integrated-circuits-power-audio-amplifiers-data-bookpdf-5lw299zr4elj, https://l0ad-knigi.0rg/l 7062-markirovka-radiodetaley-sbornik-knig.html şi http://radiomaster.com.ua/9l33-active-smd- emiconductor-components-marking-codes.html') şi a constatat că a fost blocată valorificarea cărţilor pe site-urile https://load-knigi.org şi http://radiomaster.com.ua. Însă, valorificarea cărţii „5000 integrated circuits - power audio amplifiers", 2008 edition pe site-ul https://doku.pub nu a încetat, accesul la cartea (opera) „5000 integrated circuits - power audio amplifiers", 2008 edition nu a fost blocat, astfel că încălcarea drepturilor sale de autor a continuat, inclusiv până la data depunerii cererii de chemare în judecată.

Susţine Turuta Eugeniu, că art. 5 al Convenţiei de la Berna cu privire la protecţia operelor literare şi artistice din 09.09.1866 ratificată de către Parlamentul Republicii Moldova la 2 noiembrie 1995 prevede următoarele: 1) în cazul operelor autorii cărora sunt protejaţi conform prezentei Convenţii, pe teritoriul statelor Uniunii, altele decât ţara de origine, autorii se vor bucura de drepturile pe care legile interne ale acestor ţări le acordă sau le vor acorda în viitor cetăţenilor lor, precum şi de drepturile acordate expres de prezenta Convenţie; 2) beneficierea de drepturile respective şi exercitarea acestora nu va fi supusă nici unei formalităţi; beneficierea şi exercitarea fiind posibile independent de existenţa protecţiei în ţara de origine a operei. În consecinţă indiferent de prevederea prezentei Convenţii, limitele protecţiei, precum şi mijloacele de redresare permise autorului pentru a-şi ocroti drepturile, vor fi administrate în exclusivitate de legile ţării în care este revendicată protecţia.

Relevă reclamantul, că potrivit art. 9 alin. (1) din Legea nr.139 din 02.07.2010 privind dreptul de autor şi drepturile conexe, dată fiind absenţa unei probe contrare, drepturile sale de autor asupra operelor (cărţilor) care fac obiectul litigiului în prezenta cauză se prezumă: Art. 9 „Se consideră a fi autor, în absenţa unei probe contrare, persoana fizică sub al cărei nume pentru prima dată este publicată opera". Norma art. 9 alin. (1) din Legea nr. 139 din 02.07.2010 este complementară art. 15 alin. (1) al Convenţiei de la Berna, care spune următoarele: 1) Pentru ca autorul operelor literare şi artistice ocrotite de prezenta Convenţie să fie considerat ca atare şi, în consecinţă, să fie îndrituit să acţioneze în justiţie violările acestui drept pe teritoriul statelor Uniunii, dacă legislaţia naţională nu prevede contrariul, este suficient să apară numele autorului în opera respectivă în mod obişnuit. Prezentul paragraf va fi aplicat chiar dacă numele respectiv este un pseudonim, în cazul în care pseudonimul folosit de autor nu trezeşte îndoieli. Conform art. 5 alin. (3) al Legii privind dreptul de autor şi drepturile conexe nr. 139 din 02.07.2010 drepturile autorului Turuta Eugeniu se constituie din drepturi patrimoniale şi drepturi morale (personale nepatrimoniale) de autor. Conform art. 5 alin (5) al Legii nr. 139 din 02.07.2010 drepturile patrimoniale pot aparţine autorului ori altei persoane fizice sau juridice care deţine în mod legal, drepturile respective (titularul de drepturi), astfel drepturile patrimoniale de autor asupra cărţilor în litigiu aparţin şi reclamantului Turuta Radu.

Menţionează reclamantul, că art. 11. alin. (1) al Legii nr. 139 din 02.07.2010 defineşte următoarele modalităţi de valorificare ale obiectelor dreptului de autor: a) reproducerea operei; b) distribuirea originalului sau a exemplarelor operei; i) punerea la dispoziţie în regim interactiv a operei. Art. 3 al Legii nr. 139 din 02.07.2010 defineşte următoarele: distribuire - punere în circulaţie, prin vânzare sau prin orice alt mod de transmitere în proprietate, cu titlu oneros ori gratuit, a originalului ori a copiilor unei opere sau a unor obiecte ale drepturilor conexe, precum şi oferirea publică a acestora; punere la dispoziţie în regim interactiv - a pune la dispoziţie o operă sau un obiect al drepturilor conexe prin intermediul mijloacelor cu sau fără fir, inclusiv prin internet ori prin alte reţele de calculatoare, astfel încât oricare dintre membrii publicului să poată avea acces la acestea

3

din orice loc și în orice moment ales în mod individual de ei; reproducere - realizarea unuia ori a mai multor exemplare ale unei opere sau ale unui obiect al drepturilor conexe, fie directă sau indirectă, temporară sau permanentă, prin orice mijloc sau sub orice formă, inclusiv în scopul de imprimare audio ori video și/sau al stocării unei opere ori a unui obiect al drepturilor conexe pe suporturi materiale sau electronice.

Astfel reclamantul, că potrivit art. 30 al Legii privind dreptul de autor și drepturile conexe nr. 139 din 02.07.2010 autorii sau alți titulari ai dreptului de autor pot transmite prin contract de cesiune, dacă prezenta lege nu prevede altfel, drepturile patrimoniale exclusive, precum și dreptul la remunerație de autor. În urma unei asemenea cesiuni, titular de drepturi devine cesionarul. Autorii sau alți titulari ai dreptului de autor pot transmite prin contract de cesiune, dacă prezenta lege nu prevede altfel, drepturile patrimoniale exclusive, precum și dreptul la remunerație de autor. În urma unei asemenea cesiuni, titular de drepturi devine cesionarul. În cazul în care prezenta lege nu prevede altfel, drepturile patrimoniale exclusive pot fi transmise, de asemenea, prin acordarea de licențe exclusive sau neexclusive. Dacă în contractul de licență nu se stipulează expres că licența este exclusivă, aceasta se consideră neexclusivă. În cazul unei licențe neexclusive, licențiatul poate, în limitele stabilite de această licență, valorifica opera ca și persoanele care au obținut dreptul de valorificare a acesteia. Licențiatul nu are dreptul să permită sau să interzică valorificarea operei de către alte persoane.

Notează Turuta Eugeniu, că art. 31 al Legii nr. 139 din 02.07.2010 stabilește condițiile și forma contractului de autor: „Contractul de autor trebuie să fie încheiat în formă scrisă și să prevadă modul de valorificare a operei (dreptul concret care se transmite prin acest contract), termenul de valabilitate, teritoriul de acțiune a dreptului, cuantumul remunerației sau baza de calcul a acesteia pentru fiecare tip de valorificare a operei, condițiile și termenul de plată ale remunerației, precum și alte clauze pe care părțile le consideră esențiale. Contractul de autor privind valorificarea operelor în ziare și în alte publicații periodice poate fi încheiat și în formă verbală. În contractul de autor, remunerația de autor se stabilește în cote procentuale din venitul obținut ca urmare a valorificării în modul corespunzător a operei sau sub forma unei taxe forfetare, sau în conformitate cu tarifele remunerației aprobate de organizațiile de gestiune colectivă a drepturilor patrimoniale, sau în oricare alt mod".

Susține reclamantul, că potrivit art. 5 alin (5) al Legii nr. 139 din 02.07.2010 drepturile patrimoniale pot aparținea autorului ori altei persoane fizice sau juridice care deține, în mod legal, drepturile respective (titularul de drepturi). Astfel drepturile patrimoniale de autor asupra cărților în litigiu aparțin și reclamantului Turuta Radu, în limita drepturilor transmise potrivit contractului de autor din 15 februarie 2008. Art. 54 al Legii nr. 139 din 02.07.2010 instituie răspunderea pentru încălcarea drepturilor de autor: „Orice valorificare a obiectelor dreptului de autor, ale drepturilor conexe sau ale altor drepturi protejate de prezenta lege se consideră nelegitimă dacă are loc cu încălcarea acestor drepturi. Orice exemplar al obiectelor dreptului de autor, ale drepturilor conexe sau ale altor drepturi protejate de prezenta lege a cărui reproducere, import, distribuire, închiriere sau împrumut atrage încălcarea acestor drepturi se consideră contrafăcut. Depozitarea în scopuri comerciale a exemplarelor obiectelor dreptului de autor, ale drepturilor conexe sau ale altor drepturi protejate de prezenta lege se consideră nelegitimă dacă are loc cu încălcarea acestor drepturi. Încălcarea drepturilor recunoscute și garantate prin prezenta lege atrage răspundere civilă, contravențională sau penală, după caz, potrivit legii. Dispozițiile procedurale prevăzute de prezenta lege se completează cu cele de drept comun.

A adăugat reclamantul, că potrivit art. 476 Cod civil se consideră obiect de proprietate intelectuală orice rezultat al activității intelectuale, confirmat și protejat prin

4

drepturile corespunzătoare privind utilizarea acestuia. Obiectele de proprietate intelectuală se divizează în două categorii: a) obiecte de proprietate industrială (invenţii, soiuri de plante, topografii de circuite integrate, mărci, desene şi modele industriale, indicaţii geografice, denumiri de origine şi specialităţi tradiţionale garantate); b) obiecte ale dreptului de autor (opere literare, artistice şi ştiinţifice etc.) şi ale drepturilor conexe (interpretări, fonograme, video grame şi emisiuni ale organizaţiilor de difuziune etc.). În condiţiile legii, titularul dreptului asupra obiectului de proprietate intelectuală: a) poate înstrăina dreptul prin cesiune; b) poate permite exploatarea lui de către terţi prin licenţă exclusivă sau neexclusivă; c) poate exercita alte drepturi morale şi patrimoniale prevăzute de lege în privinţa obiectului dreptului exclusiv. Cu excepţiile prevăzute de lege, nicio persoană nu poate exploata dreptul asupra obiectului de proprietate intelectuală al altuia fără licenţa corespunzătoare. Licenţa se prezumă neexclusivă dacă nu s-a prevăzut expres contrariul. Dreptul asupra obiectului de proprietate intelectuală şi dreptul acordat prin licenţă se consideră bunuri incorporale şi pot fi grevate cu drepturi reale limitate în folosul terţilor.

Afirmă reclamantul, că potrivit extrasului de pe pagina web https://doku.pub/documents/5000-integrated-circuits-   power-audio-amplifiers-data-bookpdf-5lw299zr4elj cartea „5000 integrated circuits power audio amplifiers", 2008 edition" a fost valorificată (pusă la dispoziţia publicului în regim interactiv, distribuită şi reprodusă) de 64 625 ori. După notificarea către pârât despre încălcarea drepturilor de autor asupra operei (cărţii) – „5000 integrated circuits power audio amplifiers", pârâtul compania Cloudflare INC nu s-a conformat cerinţelor legale ale autorului şi nu a blocat, restricţionat accesul şi/sau şters obiectele cartea) indicată, iar valorificarea ilegală al acesteia a continuat, inclusiv până la data depunerii cererii de chemare în judecată. Compania Cloudflare INC în fapt acordă servicii de transmisii date prin internet terţelor persoane, inclusiv proprietarilor site-ului https://doku.pub.

Relevă Turuta Eugeniu, că art. 66. alin. (1) al Legii nr. 139 din 02.07.2010 stabileşte că, persoana fizică sau juridică care acordă servicii de hosting şi/sau transmisii de date (internet/intranet), inclusiv internet-provider, se consideră complice atunci când contribuie nemijlocit la încălcarea dreptului de autor şi/sau a drepturilor conexe şi poartă răspundere pentru încălcarea acestor drepturi în următoarele cazuri: a) dacă, având posibilitate tehnică să blocheze, să restricţioneze accesul şi/sau să şteargă în timp oportun obiectele ce sunt publicate şi/sau utilizate cu încălcarea dreptului de autor şi/sau a drepturilor conexe şi fiind înştiinţată de titularul de drepturi respective sau de reprezentanţii săi (cu indicarea obiectului concret) despre încălcarea în cauză, nu a executat cerinţele titularului dreptului de autor şi/sau al drepturilor conexe privind blocarea, restricţionarea accesului şi/sau ştergerea obiectelor indicate.

Indică reclamantul, că înscrisurile anexate la cerere probează cu certitudine că, compania pârâtă a fost înştiinţată de către autor despre încălcarea drepturilor de autor pe site-ul https://doku.pub, cu indicarea obiectelor concrete. Compania pârâtă a declarat printr-un răspuns formal că a recepţionat notificările, dar în realitate nu a respectat prevederile art. 66. alin. (1) al Legii nr. 139 din 02.07.2010, nu a executat cerinţele titularului dreptului de autor (reclamantului) şi nu a blocat, restricţionat accesul şi/sau şters obiectelor indicate, prin urmare se consideră complice şi poartă răspundere pentru încălcarea acestor drepturi. În condiţiile respective reproducerea şi distribuirea ilegală de pe site-ul https://doku.pub a operei protejate prin Legea dreptului de autor·încalcă dreptul de autor al coreclamanţilor şi cauzează prejudicii materiale grave. Astfel, conform art. 55 alin. (1) şi 2 lit. a) al Legii 139 din 02.07.2010 coreclamanţi sunt în drept să se adreseze în instanţa de judecată cu cerinţa de a constata prin hotărâre judecătorească încălcarea drepturilor patrimoniale de autor asupra operei în litigiu

(responsabil, - compania Cloudflare INC) cu încasarea din contul pârâtei în contul coreclamanților prejudiciul material cauzat.

Reiterează Turuta Eugeniu, că potrivit art. 63 al Legii 139 din 02.07.2010, în cadrul procedurilor judiciare inițiate în privința încălcării dreptului de autor, a drepturilor conexe sau a altor drepturi protejate de prezenta lege, persoanele specificate la art. 55 alin. (2) pot solicita instanțelor de judecată sau altor organe competente, după caz, recunoașterea drepturilor lor, constatarea încălcării acestora, restabilirea situației existente până la încălcarea dreptului și încetarea acțiunilor care comportă încălcarea dreptului sau creează pericolul încălcării lui, precum și repararea prejudiciului prin stabilirea unor despăgubiri. Instanța de judecată, la stabilirea despăgubirii, va ține cont de necesitatea: a) recuperării pierderilor, inclusiv a venitului ratat, suportate de partea lezată; b) perceperii profitului obținut ilegal de persoana care a încălcat drepturile; c) achitării unei compensații de la 500 până la 500000 lei pentru fiecare drept încălcat. Restabilirea situației existente până la încălcarea dreptului poate avea loc doar prin repararea prejudiciului cauzat autorului Turuta Eugeniu și titularului de drepturi Turuta Radu.

Susține reclamantul, că potrivit lit. b) alin. (1) art. 16 Cod civil, apărarea dreptului civil se face, în condițiile legii, prin: b) restabilirea situației anterioare încălcării dreptului și suprimarea acțiunilor prin care se încalcă dreptul sau se creează pericolul încălcării lui. În virtutea art. 19 Cod civil, persoana lezată într-un drept al ei sau într-un interes recunoscut de lege poate cere repararea integrală a prejudiciului patrimonial și nepatrimonial cauzat astfel. Se consideră prejudiciu patrimonial inclusiv și profitul ratat ca urmare a încălcării dreptului sau interesului recunoscut de lege (profit ratat). Repararea prejudiciului presupune repunerea persoanei lezate în situația în care s-ar fi aflat dacă prejudiciul nu se producea.

La fel declară reclamantul, că numărul de exemplare de carte valorificată ilegal (pusă la dispoziția publicului în regim interactiv, distribuită și reprodusă) către data de 31 octombrie 2020 pe site-ul https://doku.pub este următorul: Cartea „5000 integrated circuits power audio amplifiers", 2008 edition – 6 4625 ori. Prețul de vânzare ale unei cărți (care conform contractului de autor din 15 februarie 2008 constituie remunerația pentru transmiterea în proprietate către cumpărător a cărții) și care se confirmă prin chitanța de plată primită de către reclamanți prin intermediul sistemului de plată PayPal, este următorul: „5000 integrated circuits power audio amplifiers", 2008 edition, - 16 Euro. Astfel, venitul ratat, suportat de partea lezată (reclamanți) este următorul: „5000 integrated circuits power audio amplifiers", 2008 edition: 64 25 valorificăriX16 euro = 1034000 euro.

Prin cererea din 11 aprilie 2022, reclamanții Turuta Eugeniu și Turuta Radu și-au majorat cuantumul pretențiilor din acțiune, solicitând constatarea încălcării drepturilor patrimoniale de autor ale autorului Turuta Eugeniu și titularului de drepturi de autor Turuta Radu la valorificarea operei (cărții) „5000 integrated circuits power audio amplifiers" 2008 edition; prin intermediul site-ului https://doku.pub, responsabil compania Cloudflare INC; reieșind din mărimea remunerației de autor (prețul de vânzare) pentru fiecare exemplar de carte (operă), dreptul de autor asupra căreia se încalcă și de numărul de valorificări ilegale, în conformitate cu art. 63 alin. (2) lit. b) al Legii 139 din 02.07.2010, pentru încălcarea drepturilor patrimoniale de autor ale autorului Turuta Eugeniu și titularului de drepturi de autor Turuta Radu (dreptul exclusiv la valorificarea operei, inclusiv prin reproducere, import, distribuire și punere la dispoziție în regim interactiv), să fie încasat din contul companiei Cloudflare INC în beneficiul autorului Turuta Eugeniu și titularului de drepturi de autor Turuta Radu venitul ratat suportat: pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 79804 distribuiriX16 euro = 1276864 euro.

Prin hotărârea Judecătoriei Chișinău /sediul Centru/ din 9 iunie 2022, cererea de chemare în judecată înaintată de Turuta Eugeniu și Turuta Radu a fost respinsă ca neîntemeiată.

6

În motivarea soluției date instanța de fond a reținut, că compania-pârâtă „Cloudflare, Inc" nu este companie care acordă site-ului *https://doku.com,* care nemijlocit distribuie și reproduce opera autorului, servicii de hosting și/sau transmisii de date (internet/intranet), inclusiv internet-provider. Astfel, pârâta nu poate fi considerată complice la încălcarea dreptului de autor, având în vedere că nu au fost întrunite condițiile legale prevăzute la art. 66 alin. (1) din Legea nr. 139/2010, nefiind demonstrat faptul că este compania de găzduire (hosting) a site-ului *https://doku.pub,* sau îi acordă servicii de transmisii de date (internet/intranet), inclusiv internet-provider, dat fiind constatat că este o companie care prestează servicii de securitate cibernetică și care nu este responsabilă pentru conținutul transmis prin rețeaua companiei. Prin urmare, instanța a conchis, că nu există temeiuri de a considera că „Cloudflare, Inc" a încălcat drepturile patrimoniale ale reclamanților, și respectiv, de a fi trasă la răspundere patrimonială prin încasarea unor sume sub formă de venit ratat.

Nefiind de acord cu hotărârea instanței de fond, la data de 13 iunie 2022, reclamanții Turuta Eugeniu și Turuta Radu, prin intermediul secției evidență și documentare procesuală a instanței de fond, au contestat cu apel hotărârea primei instanțe, solicitând admiterea cererii de apel, casarea hotărârii instanței de fond și emiterea unei noi hotărâri de admitere a acțiunii integral.

Prin încheierea Colegiului civil, comercial și de contencios administrativ al Curții de Apel Chișinău din 8 septembrie 2022 apelul declarat de Turuta Eugeniu și Turuta Radu a fost acceptat pentru examinare și intentată procedura în apel.

În motivarea cererii de apel apelanții Turuta Eugeniu și Turuta Radu au indicat, că prima instanță și-a întemeiat soluția pe circumstanța conform căreia compania pârâtă nu acordă servicii de hosting (găzduire), doar acordă servicii de proxy invers și securitate de trecere și nu verifică conținutul site-urilor web. Constatarea în cauză a reieșit din răspunsul oferit de către compania Cloudflare INC și pe prevederile politicilor de utilizare publicate pe site-ul oficial al Cloudflare INC.

Susțin apelanții, că constatarea respectivă este una eronată, ilegală și emisă cu încălcarea prevederilor legii referitor la limitele judecării cauzei de către instanța, mai mult ca atât, fiind o dovadă a încălcării principiului imparțialității de către instanța de judecată. Ori, potrivit art. 26 CPC, consfințește atât principiul contradictorialității și egalității părților în proces, cât și principiul imparțialității instanței de judecată: „Procesele civile se desfășoară pe principiul contradictorialității și egalității părților în drepturile procedurale. Contradictorialitatea presupune organizarea procesului astfel încât părțile și ceilalți participanți la proces să aibă posibilitatea de a-și formula, argumenta și dovedi poziția în proces, de a alege modalitățile și mijloacele susținerii ei de sine stătător și independent de instanță, de alte organe și persoane, de a-și expune opinia asupra oricărei probleme de fapt și de drept care are legătură cu cauza dată judecății și de a-și expune punctul de vedere asupra inițiativelor instanței. Instanța care judecă cauza își păstrează imparțialitatea și obiectivitatea, creează condiții pentru exercitarea drepturilor participanților la proces, pentru cercetarea obiectivă a circumstanțelor reale ale cauzei". Or, instanța de fond, fără să existe careva cereri din partea participanților la proces, prin accesarea site-ului web al companiei pârâte https://cloudflare.com, în afara ședinței de judecată a căutat în mod activ dovezi în favoarea acesteia, dând dovadă clară de lipsă de imparțialitate față de reclamanți. Mai mult, textul pe site-ul web al companiei pârâte fiind exclusiv în limba engleză, nu este clar cine și care traducător a asigurat traducerea textului din limba engleză în limba română pentru judecător. În cadrul ședințelor de judecată circumstanțele referitor la oferirea serviciului de transmisii date de către compania pârâtă sau la calitatea de internet-provider a acesteia în genere nu au fost examinate.

7

Menționează apelanții, că compania pârâtă a declarat că nu acordă servicii de hosting, dar acordă servicii de proxy invers. Însă nici în dosar, nici în procesul-verbal al ședințelor de judecată, nici pe site-ul https://cloudflare.com nu există informație sau declarație a companiei pârâte precum că aceasta nu ar acorda servici de transmisii de date sau că aceasta nu ar fi un internet-provider. Iar din faptul că compania pârâtă acordă servicii de proxy invers nicidecum nu reiese că acest serviciu exclude serviciul de transmisii date sau că persoana care acordă servicii de proxy invers nu este un internet-provider. Serviciul de proxy invers este un serviciu tehnic (tehnologic) și nu reprezintă o prevedere legală, sau o probă într-un dosar civil, pe care instanța de judecată ar putea-o interpreta sau a-i da apreciere la intima sa convingere. Pentru a concluziona că un serviciu de proxy invers nu reprezintă un serviciu de transmisii date nu este suficientă doar convingerea instanței de judecată. Pentru aceasta sunt necesare argumente tehnice temeinice, prezentate de specialiști în domeniu, însă nici una există și nici nu pot exista, deoarece un serviciu de proxy invers reprezintă în același timp și un serviciu de transmisii date între serverul (calculatorul) pe care se găsește site-ul accesat și utilizatorul final. Mai mult, odată ce pentru a se informa, instanța de judecată a accesat site-ul https://cloudflare.com al companiei pârâte, ea nu putea să nu observe că compania pârâtă își autointitulează totalitatea serviciilor sale cs CDN (abreviere de la Content Delivery Network, în limba română Rețea de Livrare de Conținut). Astfel pe pagina web al companiei pârâte https://developers.cloudflare.com compania informează clienții săi despre modalitatea de configurare a serviciului CDN. Iar la accesarea enciclopediei Online Wikipedia, se găsește despre compania Cloudflare Inc. următoarea informație: Cloudflare INC este o companie din SUA care oferă servicii de livrare de conținut, securitate și servicii distribuite de nume de domenii internet, situându-se între vizitator și furnizorul de hosting al utilizatorului Cloudflare, acționând ca un proxy invers pentru site-uri de internet. Aceeași enciclopedie online Wikipedia descrie furnizorii de servicii Internet (service-provideri) ca firme sau organizații care oferă conexiune și acces la Internet și servicii. Deseori ei sunt numiți „ISP", inițialele denumirii din limba engleză Internet Service Provider. Accesul fizic la Internet poate fi prin linie de telefon comutată (dial-up), acces prin linie închiriată, linie de telefon ISDN, linie de telefon ADSL, cablu (de TV), radio, sistemul de telefonie mobilă GSM, sistemul de telefonie mobilă UMTS, satelit ș.a. Serviciile oferite pot fi servicii de tranzit Internet, înregistrare nume domeniu, colocație etc. Deoarece încălcarea drepturilor de autor ale coreclamanților asupra operei în litigiu prin intermediul site-ului https://doku.pub nu a încetat până la momentul de față, iar la data de 11 august 2022 autorul Turuta Eugeniu a remis o notificare nouă către compania pârâtă Cloudflare INC. La aceeași dată compania Cloudflare INC a confirmat primirea notificării și a explicat că oferă soluții de servicii de rețea, inclusiv servicii de securitate de trecere, este o rețea de distribuție de conținut (CDN), adică de transmisii date și servicii de înregistrare. Datorită naturii de transmitere a serviciilor sale, adresele IP ale companiei apar în înregistrările WHOIS și DNS pentru site-urile web care utilizează Cloudflare. Cloudflare nu poate elimina materialele de pe Internet găzduite de alții, însă reieșind din serviciul de securitate de trecere (de creare de filtre specifice) este cert că compania Cloudflare INC avea și are posibilitatea tehnică să blocheze accesul la anumite obiecte (opere protejate de dreptul de autor) pe care le transmite de pe serverele de hosting către utilizatorii finali.

Consideră apelanții, că potrivit explicațiilor tehnice reproduse supra, unica concluzie care poate exista este, că compania pârâtă Cloudflare INC oferă servicii de livrare de conținut, adică de transmisii date și este un internet-provider. Concluzia în cauză este confirmată prin două hotărâri a instanțelor din Uniunea Europeană în privința companiei Cloudflare INC. În cauza 1-6 U32/20, Universal Music vs Cloudfare la 9

octombrie 2020 OLG Köln (Curtea Supremă din Köln, Republica Federală Germania) a confirmat ordinul de blocare, care obligă Cloudflare (pârâtul) să împiedice terții să pună la dispoziția publicului un album muzical prin intermediul anumitor site-uri web și servere de nume de domeniu. De asemenea, Cloudflare a primit ordin să furnizeze Universal Music (reclamantul) informații despre numele și adresa operatorului site-ului web. Pentru a ajunge la această concluzie, Curtea Supremă a considerat că Cloudflare nu a întreprins măsurile adecvate pentru a opri activitățile care încalcă drepturile de autor, care au loc prin intermediul serviciilor sale a rețelei de livrare de conținut (CDN) și DNS (server de nume de domeniu). Curtea Supremă din Köln a motivat că recursul pârâtei este nefondat și că pârâta nu s-a opus ipotezei instanței regionale că, în calitate de furnizor de servicii CDN, a fost responsabil în comun pentru ca albumul muzical în cauză să fie accesibil public prin intermediul site-ului web ddl-music.to. Potrivit Curții, în pofida faptului că pârâtul însăși nu exploata site-ul web și nu fixase hyperlinkurile, contractual, aceasta preluase rolul operatorilor de site-uri web pentru a acționa ca CDN server pentru site-ul web și, prin urmare, a contribuit în mod adecvat la încălcarea cauzală a legii. Lucrul respectiv a dus la responsabilitatea pentru încălcare ca perturbator. Pentru Curte, aportul pârâtei a fost că a intervenit în traficul de date dintre site-ul clientului și utilizatori, astfel că tot traficul de internet către și dinspre site-ul clientului circula prin rețeaua de servere a pârâtului. Activarea serverului inculpatului a fost așadar suficient de cauzală pentru accesul public ilegal la albumul muzical în cauză prin intermediul site-ului clientului. Curtea a mai reținut că, întrucât modelul de afaceri al pârâtei a fost inițial neutru din punct de vedere obiectiv și dezirabil din punct de vedere social, o obligație generală de audit și monitorizare a conținutului domeniilor sale de clienți ar fi disproporționat. Cu toate acestea, pârâtul avea cunoștințe specifice despre activitatea ilegală și, din acel moment, era obligată să se abțină de la a contribui la activitățile ilicite. Timp de 8 luni inculpatul nu a reacționat și prin urmare a fost confirmata o injoncțiune.

Afirmă apelanții, că în ordonanța nr. 42163/2019 R.G. Sky Italia, Lega Serie A vs Cloudflare Inc. și alții, la 5 octombrie 2020 Tribunalul din Milano (Republica Italiană) a confirmat o ordonanță de blocare dinamică prin care dispune blocarea numelor de domenii actuale și viitoare și a adreselor IP ale mai multor servicii de televiziune cu protocol de internet (IPTV) pentru distribuția ilegală de conținut audiovizual. În decizie au fost implicați principalii furnizori de servicii de internet (ISP) italieni, împreună cu furnizorul de găzduire „OVH" și operatorul de rețele de livrare de conținut (CDN) Cloudflare INC. În timp ce Cloudflare INC a susținut că nu poate fi considerată răspunzătoare pentru găzduirea de conținut care încalcă drepturile de autor, Curtea a considerat că acest serviciu se califică ca intermediar în conformitate cu articolul 156 și următoarele din Legea italiană privind drepturile de autor (de punere în aplicare a articolului 8 alineatul (3) din Directiva 2001/29/CE), împotriva căruia ar putea fi emisă o ordonanță, indiferent de orice răspundere proprie. Curtea a clarificat, de asemenea, domeniul de aplicare al ordinului de blocare dinamică, invitând deținătorii de drepturi să comunice furnizorilor de servicii noi adrese IP și domenii pentru a extinde ordinul de blocare pentru a acoperi viitoarele încălcări. Cloudflare INC a susținut că Curtea nu are competență în acest caz. De asemenea, a susținut că furnizează doar un serviciu de stocare a datelor tranzitorii și, în consecință, nu putea fi considerată responsabilă pentru găzduirea directă a conținutului care încalcă drepturile. Instanța a respins pretențiile intimatului. În primul rând, Curtea a precizat că comportamentul său „ar putea facilita, prin simpla activitate de stocare a datelor statice, activitatea terților care încalcă drepturile de autor". În al doilea rând, Curtea a hotărât că ar putea fi emisă o ordonanță împotriva Cloudflare INC și a altora în temeiul articolului 156 din Legea

italiană privind drepturile de autor și al articolului 669 bis și următoarele din Codul de procedură civilă italian. De asemenea, a subliniat că clasificarea între furnizorii de găzduire, caching și servicii simple de transmisii date este irelevantă, cu condiția ca posibilitatea a emite o ordonanță împotriva unui intermediar pe baza dispozițiilor de mai sus nu depinde de răspunderea intermediarului pentru (presupusa) încălcare a drepturilor de autor.

Notează apelanții, că în temeiul argumentelor expuse supra și a deciziilor instanțelor UE (care au suficientă autoritate pentru a fi luate în considerare), instanța de apel urmează să constate că, concluzia instanței de fond, referitor la responsabilitatea companiei Cloudflare INC este eronată și ilegală. Astfel compania pârâtă acordă servicii de transmisii date, inclusiv este un internet-provider, are posibilitatea tehnică să blocheze accesul la opera în litigiu, până în prezent nu a executat cerințele autorului operei în litigiu privind blocarea operei indicate, prin urmare se consideră complice și poartă răspundere integrală pentru încălcarea drepturilor de autor ale reclamanților, astfel, cum este prevăzut în art. 66 al Legii nr. 139 din 02.07.2010, persoana fizică sau juridică care acordă servicii de hosting și/sau transmisii de date (internet/intranet), inclusiv internet-provider, se consideră complice atunci când contribuie nemijlocit la încălcarea dreptului de autor și/sau a drepturilor conexe și poartă răspundere pentru încălcarea acestor drepturi în următoarele cazuri: a) dacă, având posibilitate tehnică să blocheze, să restricționeze accesul și/sau să șteargă în timp oportun obiectele ce sunt publicate și/sau utilizate cu încălcarea dreptului de autor și/sau a drepturilor conexe și fiind înștiințată de titularul de drepturi respective sau de reprezentanții săi (cu indicarea obiectului concret) despre încălcarea în cauză, nu a executat cerințele titularului dreptului de autor și/sau al drepturilor conexe privind blocarea, restricționarea accesului și/sau ștergerea obiectelor indicate.

Indică apelanții, că concluziile subsidiare ale primei instanțe referitor la diverse circumstanțe ale cauzei de asemenea sunt ilegale, deoarece au fost emise cu aplicarea eronată a legii. Instanța de judecată constată că, „În același timp, Turuta Eugeniu a notat că, deoarece Cloudflare INC nu are capacitate de a elimina conținut de pe site web, este practica acestuia de a trimite reclamații de abuz către entități precum furnizorul de găzduire și/sau proprietarul site-ului web pentru a le urmări, bifând opțiunea: să fie transmis raportul furnizorului de găzduire a site- ului web, și opțiunea; să fie transmis raportul proprietarului site-ului web”. Este o constatare total eronată, deoarece Turuta nu a notat și nici nu putea să noteze despre faptul că Cloudflare INC nu are capacitate de a elimina conținut de pe site web, este practica acestuia de a trimite reclamații de abuz către entități precum furnizorul de găzduire și/sau proprietarul site-ului web pentru a le urmări. Informația respectivă este prestabilită (se găsește) pe formularul de notificare și deloc nu înseamnă că Eugeniu Turuta este de acord cu ea. Mai mult, Turuta Eugeniu este sigur că informația respectivă induce în eroare persoanele care notifică compania pârâtă despre încălcările drepturilor sale de autor.

Afirmă apelanții, că, instanța de fond respinge ca declarative și lipsite de suport probatoriu alegațiile reclamanților privind acordarea de către compania Cloudflare INC a serviciilor de transmisii date prin internet site-ului https://doku.pub, nefiind prezentate careva probe pertinente și concludente în acest sens, în circumstanțele în care compania-pârâtă a informat că este doar serviciu de proxy invers, securitate de trecere și nu verifică conținutul site-urilor web”. Constatarea instanței este total eronată. Compania Cloudflare INC nu acordă servicii de transmisii date prin internet site-ului https://doku.pub, dar acordă servicii de transmisii date între site-ul https://doku.pub și utilizatorii finali, faptul dat fiind confirmat chiar de Cloudflare INC, care declară că este o rețea de trecere și constatat de către instanța de judecată la pag. 8 a hotărârii. Or, printr-

10

o rețea de trecere pot trece doar informații, sau altfel spus date, deoarece obiectele fizice nu pot trece prin rețea. Mai mult, dacă instanța de judecată avea anumite dubii referitor la modalitatea de funcționare a rețelei de trecere, ea, în conformitate cu art. 118 alin. 5 CPC era în drept să propună reclamanților să prezinte probe suplimentare, „Instanța judecătorească (judecătorul) este în drept să propună părților și altor participanți la proces, după caz, să prezinte probe suplimentare și să dovedească faptele ce constituie obiectul probațiunii pentru a se convinge de veridicitatea lor". Astfel, prima instanță a omis să aplice prevederea legală relevantă și a respins alegațiile reclamanților privind acordarea de către compania „Cloudflare INC a serviciilor de transmisii date, întemeindu-și soluția doar pe presupuneri.

Relevă apelanții, că instanța de judecată atestă faptul, că partea reclamantă nu a prezentat probe, care ar confirma faptul că a adresat un raport proprietarului site-ului https://doku.pub, care nemijlocit se pretinde a fi violatorul dreptului de autor prin distribuirea cărții nominalizate, sau companiei de găzduire a acestuia, indicată de către compania care ar putea fi considerată complice și care contribuie nemijlocit la încălcarea dreptului de autor. Prima instanță atestă un fapt care nu este prevăzut de lege. Într-adevăr, art. 66 al Legii nr. 139 din 02.07.2010 prevede notificarea despre încălcarea drepturilor de autor doar a persoanei fizice sau juridice care acordă servicii de hostng sau transmisii de date, inclusiv internet-provider, iar dreptul de a selecta persoana respectivă revine exclusiv titularului de drepturi de autor. Constată instanța de fond că la caz, compania-pârâtă, deși s-a constatat că oferă servicii de proxy invers și securitate cibernetică și nu de hosting, de transmisii de date (internet/intranet), internet-provider, la notificare a întreprins acțiuni privind curmarea încălcării dreptului de autor, fiind restricționat accesul la opera autorului pe site-urile https://load-knigi.org și http://radiomaster.com.ua, iar cu referire la site-ul https://doku.pub a informat petiționarul despre imposibilitatea restricționării, indicându-i direct compania de hosting a site-ului https://doku.pub, dar și adresa la care se poate adresa pentru a notifica abuzul. Este o constatare contrară legii, ori, art. 66 al Legii nr.139 din 02.07.2010 prevede în mod expres că la primirea unei notificări, cu indicarea obiectului concret, persoana notificată este obligată să execute cerințele titularului dreptului de autor și/sau al drepturilor conexe privind blocarea, restricționarea accesului și/sau ștergerea obiectelor indicate, dar nu să informeze despre circumstanțe irelevante speței.

La cererile de apel declarate de Turuta Eugeniu și Turuta Radu, partea intimată „Cloudflare" INC nu a prezentat referința.

În ședința de judecată stabilită în instanța de apel apelantul Turuta Eugeniu a solicitat admiterea cererii de apel, casarea hotărârii instanței de fond și emiterea unei noi hotărâri de admitere integrală a acțiunii.

Apelantul Turuta Radu și intimata Cloudflare INC în ședința de judecată nu s-au prezentat, în pofida înștiințărilor sale legale, urmare a momentelor indicate și în corespundere cu prevederile art. 379 alin. (1) Cod de procedură civilă, Colegiul a dispus examinarea cauzei în lipsa acestora.

Analizând, legalitatea și temeinicia hotărârii atacate, prin prisma argumentelor invocate de participanții la proces și a materialelor din dosar în coroborare cu cadrul legal pertinent aplicabil, Colegiul consideră apelul declarat de Turuta Eugeniu și Turuta Radu drept întemeiat și care urmează a fi admis, cu casarea hotărârii instanței de fond și emiterea unei noi hotărâri de admitere a acțiunii integral, din următoarele motive.

### *Termenul de declarare a cererii de apel.*

În conformitate cu art. 362 alin. (1) Cod de procedură civilă termenul de declarare a apelului este de 30 de zile de la data pronunțării dispozitivului hotărârii, dacă legea nu prevede altfel.

După cum a fost indicat mai sus apelanții Turuta Eugeniu și Turuta Radu au depus cererea de apel la data de 13 iunie 2022, contestând hotărârea Judecătoriei Chișinău /sediul Centru/, dispozitivul căruia a fost pronunțat la 9 iunie 2022. Astfel Colegiul atestă și constată, că apelul a fost declarat în interiorul termenului acordat de Lege.

### *Cadrul legal pertinent aplicabil speței.*

În conformitate cu art. 385 lit. c) Cod de procedură civilă, instanța de apel, după ce judecă apelul, este în drept să admită apelul și să caseze integral sau parțial hotărârea primei instanțe, emițând o nouă hotărâre.

Potrivit dispozițiilor art. 118 alin. (1) Cod de procedură civilă, fiecare parte trebuie să dovedească circumstanțele pe care le invocă drept temei al pretențiilor și obiecțiilor sale dacă legea nu dispune altfel.

Articolul 130 alin. (1) Cod de procedură civilă, statuează că instanța judecătorească apreciază probele după intima ei convingere, bazată pe cercetarea multe aspectual, completă, nepărtinitoare și nemijlocită a tuturor probelor din dosar în ansamblul și interconexiunea lor, călăuzindu-se de lege.

În temeiul art. 240 alin.(1) Cod de procedură civilă, la deliberarea hotărârii, instanța judecătorească apreciază probele, determină circumstanțele care au importanță pentru soluționarea pricinilor, care au fost sau nu stabilite, caracterul raportului juridic dintre părți, legea aplicabilă soluționării pricinii și admisibilitatea acțiunii.

În conformitate cu prevederile art. 373 Cod de procedură civilă, instanța de apel verifică, în limitele cererii de apel, ale referințelor și obiecțiilor înaintate, legalitatea și temeinicia hotărârii atacate în ceea ce privește constatarea circumstanțelor de fapt și aplicarea legii în primă instanță.

În limitele apelului, instanța de apel verifică circumstanțele și raporturile juridice stabilite în hotărârea primei instanțe, precum și cele care nu au fost stabilite, dar care au importanță pentru soluționarea pricinii, apreciază probele din dosar și cele prezentate suplimentar în instanța de apel de către participanții la proces. Instanța de apel nu este legată de motivele apelului privind legalitatea hotărârii primei instanțe, ci este obligată să verifice legalitatea hotărârii în întregul ei. Concomitent, instanța de apel este obligată să se pronunțe asupra tuturor motivelor invocate în apel.

Astfel, prevederile legale enunțate în mod expres obligă instanța de apel să verifice circumstanțele și raporturile juridice stabilite în hotărârea primei instanțe, precum și cele care nu au fost stabilite și este obligată să verifice legalitatea hotărârii în întregul ei și să se pronunțe asupra tuturor motivelor invocate în apel.

Din conținutul celor relatate Colegiul reține, că sarcina instanței de apel derivă reieșind din dispozițiile art. 373 Cod de procedură civilă, în condițiile în care instanța de fond a soluționat fondul cauzei, cu expunerea argumentelor în vederea admiterii sau respingerii acțiunii în raport cu concluziile reținute de către aceasta.

Colegiul reține că instanța de apel, potrivit regulilor unui proces echitabil, reținându-se rolul determinant al concluziilor sale, are obligația să examineze efectiv problemele esențiale care îi sunt supuse aprecierii și să nu se limiteze la însușirea motivelor instanței inferioare (HirroBalani contra Spaniei, nr. 18064/91 din 09.12.1994 §27; Georgiadis vs Grecia nr. 21522/93 din 29.05.1997 §43).

Conform prevederilor art. 5 alin. (1) Cod de procedura civilă, orice persoană interesată este în drept să se adreseze în instanță judecătorească, în modul stabilit de lege, pentru a-și apăra drepturile încălcate sau contestate, libertățile și interesele legitime.

Conform art. 9 alin. (2) lit. e) Cod civil, drepturile și obligațiile civile apar în urma elaborării obiectelor de proprietate intelectuală.

Conform art. 21 Cod civil, drepturile personale nepatrimoniale și alte valori nemateriale sînt apărate în cazurile și în modul prevăzut de prezentul cod și de alte legi,

12

în limita în care folosirea modalităţilor de apărare a drepturilor civile reiese din esenţa dreptului încălcat şi din caracterul consecinţelor acestei încălcări.

Conform art. 476 alin. (1) Cod civil, se consideră obiect de proprietate intelectuală orice rezultat al activităţii intelectuale, confirmat şi protejat prin drepturile corespunzătoare privind utilizarea acestuia.

Potrivit art. 55 din Legea nr. 139 privind dreptul de autor şi drepturi conexe (1) orice persoană fizică sau juridică care are pretenţii în privinţa valorificării unui obiect al dreptului de autor, al drepturilor conexe sau al altor drepturi protejate de prezenta lege are dreptul să iniţieze acţiuni în instanţa de judecată competentă ori să sesizeze altă autoritate pentru aplicarea măsurilor, procedurilor şi remediilor prevăzute în prezentul capitol. (2) Proceduri judiciare în privinţa încălcării dreptului de autor, a drepturilor conexe sau a altor drepturi protejate de prezenta lege pot fi iniţiate: a) de titularii de drepturi sau de autorităţile abilitate cu protecţia drepturilor acestora; b) de alte persoane care beneficiază de astfel de drepturi, în special de licenţiaţi; c) de organizaţiile de gestiune colectivă a dreptului de autor şi/sau a drepturilor conexe; d) de organizaţiile profesionale de apărare şi de alţi reprezentanţi ai titularilor de drepturi şi ai licenţiaţilor. (3) Instanţele de judecată şi alte autorităţi competente vor aplica măsurile, procedurile şi remediile prevăzute în prezentul capitol într-o manieră corectă şi echitabilă, astfel încît să nu fie excesiv de dificile sau costisitoare şi să nu impună limite de timp exagerate sau tergiversări neprevăzute. Aplicarea acestor măsuri, proceduri şi remedii va fi una eficientă şi proporţionată, nu va crea obstacole în calea comerţului legal şi va oferi protecţie împotriva folosirii lor abuzive.

Conform art. 5 alin. (3) din Legea nr. 139 privind dreptul de autor şi drepturi conexe, dreptul de autor se constituie din drepturi patrimoniale şi drepturi morale (personale nepatrimoniale).

Totodată, articolul 10 din Legea nr. 139 privind dreptul de autor şi drepturi conexe, statuează că autorul unei opere beneficiază de următoarele drepturi morale: a) dreptul la paternitate – dreptul de a fi recunoscut în calitate de autor al operei sale şi dreptul de a pretinde o atare recunoaştere, inclusiv prin indicarea numelui său pe toate exemplarele operei publicate sau prin referirea la numele său, după cum se obişnuieşte, în cazul oricărei valorificări a operei, cu excepţia cazurilor când acest lucru este imposibil şi când lipsa obligaţiei de a indica numele autorului decurge din alte prevederi ale prezentei legi; b) dreptul la nume – dreptul autorului de a decide cum va figura numele său la valorificarea operei (numele adevărat, pseudonimul sau anonim); c) dreptul la respectarea integrităţii operei – dreptul la protecţia operei sale contra oricărei denaturări, schimonosiri sau a oricărei alte atingeri aduse operei, care prejudiciază onoarea sau reputaţia autorului; d) dreptul la divulgarea operei – dreptul de a decide dacă opera va fi adusă la cunoştinţa publică, în ce mod şi cînd; e) dreptul la retractarea operei – dreptul autorului de a retracta opera sa din circuitul comercial, despăgubind pe titularul dreptului de valorificare, dacă acesta este prejudiciat prin exercitarea retractării. (2) Drepturile morale nu pot face obiectul vreunei renunţări sau cesiuni şi sînt imprescriptibile, chiar şi în cazul în care autorul cedează drepturile sale patrimoniale.

Conform art.11 alin. (1) din Legea nr. 139 privind dreptul de autor şi drepturi conexe autorul sau alt titular al dreptului de autor are dreptul exclusiv să efectueze, să permită sau să interzică valorificarea operei, inclusiv prin: a) reproducerea operei; b) distribuirea originalului sau a exemplarelor operei; c) închirierea exemplarelor operei, cu excepţia operelor de arhitectură şi a operelor de artă aplicată; d) importul exemplarelor operei în vederea distribuirii, inclusiv al exemplarelor confecţionate cu consimţămîntul autorului sau al altui titular al dreptului de autor; e) demonstrarea publică a operei; f) interpretarea publică a operei; g) comunicarea publică a operei prin

13

eter, inclusiv prin satelit (teleradiodifuziune), sau prin cablu; h) retransmiterea simultană și fără modificări, prin eter sau prin cablu, a operei transmise prin eter sau prin cablu; i) punerea la dispoziție în regim interactiv a operei; j) traducerea operei; k) transformarea, adaptarea, aranjamentul sau alte modificări ale operei, cu excepția cazurilor cînd efectuarea unor acțiuni din cele enumerate la lit.a)–k) nu se încadrează în forma de exprimare a operei și pentru care nu pot fi stabilite sancțiuni.

Conform art. 54 alin. (1) și (4) din Legea nr. 139 privind dreptul de autor și drepturi conexe, orice valorificare a obiectelor dreptului de autor, ale drepturilor conexe sau ale altor drepturi protejate de prezenta lege se consideră nelegitimă dacă are loc cu încălcarea acestor drepturi. Încălcarea drepturilor recunoscute și garantate prin prezenta lege atrage răspundere civilă, contravențională sau penală, după caz, potrivit legii. Dispozițiile procedurale prevăzute de prezenta lege se completează cu cele de drept comun.

În baza art. 63 alin. (1) din Legea nr. 139 privind dreptul de autor și drepturi conexe, în cadrul procedurilor judiciare inițiate în privința încălcării dreptului de autor, a drepturilor conexe sau a altor drepturi protejate de prezenta lege, persoanele specificate la art. 55 alin. (2) pot solicita instanțelor de judecată sau altor organe competente, după caz, recunoașterea drepturilor lor, constatarea încălcării acestora, restabilirea situației existente pînă la încălcarea dreptului și încetarea acțiunilor care comportă încălcarea dreptului sau care creează pericolul încălcării lui, precum și repararea prejudiciului prin stabilirea unor despăgubiri. Totodată, alin. (2) al aceluiași articol, prevede expres că, instanța de judecată, la stabilirea despăgubirii, va ține cont de necesitatea: a) recuperării pierderilor, inclusiv a venitului ratat, suportate de partea lezată; b) perceperii profitului obținut ilegal de persoana care a încălcat drepturile; c) achitării unei compensații de la 500 până la 500000 lei pentru fiecare drept încălcat.

Potrivit art. 66 alin. (1) lit. a) al Legii nr. 139 din 02.07.2010, persoana fizică sau juridică care acordă servicii de hosting și/sau transmisii de date (internet/intranet), inclusiv internet-provider, se consideră complice atunci când contribuie nemijlocit la încălcarea dreptului de autor și/sau a drepturilor conexe și poartă răspundere pentru încălcarea acestor drepturi în următoarele cazuri: a) dacă, având posibilitate tehnică să blocheze, să restricționeze accesul și/sau să șteargă în timp oportun obiectele ce sânt publicate și/sau utilizate cu încălcarea dreptului de autor și/sau a drepturilor conexe și fiind înștiințată de titularul de drepturi respective sau de reprezentanții săi (cu indicarea obiectului concret) despre încălcarea în cauză, nu a executat cerințele titularului dreptului de autor și/sau al drepturilor conexe privind blocarea, restricționarea accesului și/sau ștergerea obiectelor indicate.

Totodată, art. 3 din Legea nr. 139 privind dreptul de autor și drepturi conexe, definește următoarele noțiuni: distribuire – punere în circulație, prin vînzare sau prin orice alt mod de transmitere în proprietate, cu titlu oneros ori gratuit, a originalului ori a copiilor unei opere sau a unor obiecte ale drepturilor conexe, precum și oferirea publică a acestora; operă – rezultat al creației intelectuale originale în domeniul literaturii, artei și științei, indiferent de mijloacele de creare, de modul concret și de forma de exprimare, de valoarea și importanța acesteia; reproducere – realizarea unuia ori a mai multor exemplare ale unei opere sau ale unui obiect al drepturilor conexe, fie directă sau indirectă, temporară sau permanentă, prin orice mijloc sau sub orice formă, inclusiv în scopul de imprimare audio ori video și/sau al stocării unei opere ori a unui obiect al drepturilor conexe pe suporturi materiale sau electronice; valorificare – orice acțiune ce ține de utilizarea sub orice formă și în orice mod a obiectelor dreptului de autor, ale drepturilor conexe sau ale altor drepturi protejate de prezenta lege.

Potrivit art. 9 alin. (1) al Convenției de la Berna cu privire la protecția operelor literare și artistice din 9 septembrie 1866 semnată de către Republica Moldova la 2

noiembrie 1995, autorii operelor literare și artistice ocrotite de prezenta Convenție vor avea dreptul exclusiv de a autoriza reproducerea operelor respective, în orice mod și sub orice formă. Alin. (2) art. 9 al Convenției prevede că va fi rezervat legislației naționale din statele membre ale Uniunii dreptul de a autoriza reproducerea unor atare opere în anumite cazuri speciale, cu condiția că o atare reproducere să nu fie în contradicție cu valorificarea normală a operei și să nu prejudicieze interesele legitime ale autorului.

### Starea de fapt și circumstanțele pricinii. Aprecierea instanței de apel.

Din suportul probator prezent la actele cauzei rezultă, că Turuta Eugeniu este autorul al mai multor cărți din domeniul informării despre componentele electronice semiconductoare, în special a cărților: 5000 integrated circuits - power audio amplifiers, 2008 edition; SMD codes. Active SMD Semiconductor Components Marking Codes, 2010 edition; SMD codes. Active SMD Semiconductor Components Marking Codes, 2011 edition; SMD codes. Active SMD și publicate *(aduse la cunoștința publicului, puse în vânzare și valorificate) prin site-ul* http://www.turuta.md.

Prin contractul de autor din 15 februarie 2008 Turuta Eugeniu a transmis către Radu Turuta prin licență neexclusivă drepturile mele patrimoniale de autor asupra operei (cărții) *5000 integrated circuits - power audio amplifiers, 2008 edition* în limitele prevăzute în contract.

La caz s-a reținut și faptul, că la data de 11 august 2020, reclamantul Turuta Eugeniu, în calitate de autor al cărților: „5000 integrated circuits - power audio amplifiers", 2008 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2010 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2011 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2014 edition, a adresat „Cloudflare, Inc", prin completarea formularelor de pe site-ul acesteia, notificări privind informarea companiei despre încălcarea drepturilor de autor pe site-urile https://doku.pub, https://load-knigi.org și http://radiomaster.com.ua, prin distribuirea ilegală a cărților a căror autor este, înaintând cerințe să fie recunoscut cu bună credință că, utilizarea materialului din raport nu este autorizat de proprietarul dreptului de autor, de agentul acestuia sau de lege; și că este autorizat să acționeze în numele proprietarului drepturilor de autor; și să înțeleagă că, în conformitate cu 17 U.S.C.&sect. 512 (f), poate fi răspunzător pentru orice daune, inclusiv costurile și onorariile avocaților, în cazul în care, în mod deliberat, denunță materialul raportat.

S-a mai constatat, că la aceiași dată de 11 august 2020, Serviciul de abuz al companiei Cloudflare INC a confirmat, că a primit reclamația înaintată de Turuta Eugeniu cu privire la încălcarea drepturilor de autor prin intermediul site-ului https://load-knigi.org, comunicând petiționarului că, „Cloudflare INC este un furnizor de rețea care oferă un serviciu proxy invers, securitate de trecere, nu este furnizor de hosting, nu controlează conținutul clienților lor. A indicat adresele URL acceptate pe https://loadknigi.org: https://load-knigi.org/17062-markirovka-radiodetaley-knig.html; informând că, furnizorul de găzduire este DATE ON-LINE, cu date de contact abuz: abuse@server-panel.net. Cu referire la notificarea privind încălcarea dreptului de autor prin intermediul site-ului http://radiomaster.com.ua, Serviciul de abuz al companiei Cloudflare INC, la fel, a informat că, este un furnizor de rețea care oferă un serviciu proxy invers, securitate de trecere, nu este furnizor de hosting, nu controlează conținutul clienților lor. A indicat adresele URL acceptate pe http://radiomaster.com.ua: http://radiomaster.com.ua/9133-active-smd-semiconductorcomponent-marking-codes.html; informând că, furnizorul de găzduire este BESTHOSTING-AS, cu date de contact abuz: abuse@besthosting.ua. Totodată, Serviciul de abuz al companiei Cloudflare INC a confirmat că, a primit reclamația cu privire la încălcarea drepturilor

15

de persoana care a încălcat drepturile; c) achitării unei compensații de la 500 până la 500000 lei pentru fiecare drept încălcat.

La caz, Completul a reținut, că reclamanții au solicitat încasarea din contul companiei Cloudflare INC în beneficiul autorului Turuta Eugeniu și titularului de drepturi de autor Turuta Radu a venitului ratat suportat: pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 79804 distribuiriX16 euro = 1276864 euro, care în opinia instanței de apel este una echitabilă și proporțională prejudiciului cauzat.

Conform art. 65 din Legea nr. 139 privind dreptul de autor și drepturi conexe, în cadrul unei proceduri de încălcare a dreptului de autor, a drepturilor conexe sau a altor drepturi protejate de prezenta lege, instanța de judecată poate dispune, la cererea reclamantului și pe cheltuiala violatorului, măsuri corespunzătoare pentru difuzarea informației despre hotărîrea de judecată, inclusiv expunerea ori publicarea ei integrală sau parțială.

În contextul dat și prin prisma prevederilor normelor legale-susmenționate, Completul consideră întemeiată și cerința reclamanților Turuta Eugeniu și Turuta Radu privind obligarea pârâtei/intimata Cloudflare INC să publice pe cheltuiala sa pe site-ul său https://www.cloudflare.com hotărârea judecătorească integrală în limba engleză timp de 6 luni.

Cu referire la cheltuielile de judecată instanța de apel relevă următoarele aspecte.

Conform art. 82 Cod de procedură civilă, cheltuielile de judecată se compun din taxa de stat și din cheltuielile de judecare a cauzei.

Totodată, în conformitate cu art. 85 alin. (1) lit. a) Cod de procedură civilă, de taxă de stat pentru judecarea cauzelor civile se scutesc reclamanții în acțiunile ce decurg din dreptul de autor și din drepturile conexe, din dreptul asupra invențiilor, desenelor și modelelor industriale, soiurilor de plante, topografiilor circuitelor integrate, precum și din alte drepturi asupra proprietății intelectuale.

Conform art. 94 alin. (1) din Codul de procedură civilă, instanța judecătorească obligă partea care a pierdut procesul să plătească, la cerere, părții care a avut câștig de cauză cheltuielile de judecată. Dacă acțiunea reclamantului a fost admisă parțial, acestuia i se compensează cheltuielile de judecată proporțional părții admise din pretenții, iar pârâtului – proporțional părții respinse din pretențiile reclamantului.

Potrivit art. 98 alin. (1) Cod de procedură civilă, cheltuielile aferente judecării cauzei, suportate de instanța judecătorească, precum și taxa de stat, de a căror plată reclamantul a fost scutit, se încasează la buget de la pârât proporțional părții admise din acțiune dacă pârâtul nu este scutit de plata cheltuielilor de judecată.

Prin urmare, ținând cont de faptul că acțiunea apelantului/reclamant a fost admisă integral, ultimul fiind scutit, în virtutea legii, de plata taxei de stat la depunerea acțiunii și a cererii de apel, instanța de apel  consideră necesar a încasa din  contul companiei Cloudflare" INC  în beneficiul statului taxa de stat în sumă de  25100 /douăzeci și cinci mii una sută/ MDL pentru examinarea cererii în instanța de fond și suma de 18825 /optsprezece mii opt sute douăzeci și cinci/ MDL, pentru examinarea cererii de apel.

În final, din considerentele descrise și anterior enunțate, având în vedere că circumstanțele pricinii au fost stabilite de către prima instanță, dar au fost apreciate greșit, la fel și normele de drept material au fost aplicate incorect și nu este necesară verificarea suplimentară a unor dovezi, Colegiul ajunge la concluzia de a admite apelurile declarate de Turuta Eugeniu și Turuta Radu, a casa hotărârea Judecătoriei Chișinău /sediul Centru/ din 9 iunie 2022 și a pronunța o nouă hotărâre de admitere integrală a pretențiilor înaintate de Turuta Eugeniu și Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor.

20

Reieșind din cele indicate și în conformitate cu prevederile art. art. 385 lit. c) și 389-390 Cod de procedură civilă Colegiul, -

### d e c i d e :

Admite apelurile declarate de Turuta Eugeniu și Turuta Radu.

Casează hotărârea Judecătoriei Chișinău /sediul Centru/ din 9 iunie 2022, pronunțată în cadrul cauzei civile intentată la cererea de chemare în judecată înaintată de Turuta Eugeniu și Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor și, în pricină, pronunță o nouă hotărâre prin care:

Admite cererea de chemare în judecată înaintată de Turuta Eugeniu și Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor.

Se constată încălcarea drepturilor de autor ale autorului Turuta Eugeniu și titularului de drepturi de autor Turuta Radu la valorificarea operei (cărții) „5000 integrated circuits power audio amplifiers" 2008 edition prin intemedi-ul site-ului https://doku.pub, responsabil compania Cloudflare, Inc.

Încasează din contul companiei Cloudflare" INC în beneficiul lui Turuta Eugeniu și Turuta Radu venitul ratat suportat: Pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 79804 valorificări$X$16 euro = 1276864 (un milion două sute șaptezeci și șase mii opt sute șaizeci și patru) euro.

Obligă compania Cloudflare, Inc. să publice pe cheltuiala sa pe site-ul său https://www.cloudflare.com hotărârea judecătorească integrală în limba engleză timp de 6 luni.

Încasează din contul companiei Cloudflare" INC în beneficiul statului taxa de stat în sumă de 25100 /douăzeci și cinci mii una sută/ MDL pentru examinarea cererii în instanța de fond și suma de 18825 /optsprezece mii opt sute douăzeci și cinci/ MDL, pentru examinarea cererii de apel.

Decizia este definitivă și executorie din data adoptării, dar cu drept de recurs la Curtea Supremă de Justiție în termen de două luni de la comunicarea deciziei integrale, prin intermediul Curții Supreme de Justiție.

**Președintele ședinței**
**Judecător**

**Ana Panov**

**Judecătorii**

**Marina Anton**

**Vitalie Cotorobai**

Copia corespunde originalului

Devenită definitivă la data de _29.06.2023_

E. Culincia
D. Donighevici

21





Total cusute __*H*__ file

Specialist _____ P.Donighevici

| APOSTILLE | |
|---|---|
| **(Convention de La Haye du 5 octobre 1961)** | |
| **1.Statul**<br>Coutry/ Pays: | Republica Moldova |
| **Prezentul act oficial**<br>This public document/ Le present act public | |
| **2..a fost semnat de către**<br>has been signed by<br>a été signé par | Dimitriu Serghei |
| **3. în calitatea sa de**<br>acting in the capacity of<br>agissant en qualité de | Judecător |
| **4. şi poartă sigiliul / ştampila**<br>bears the seal/stamp of<br>est revêtu du sceau / timbre de | Judecătoria Chişinău, sediul Centru |
| Confirmat          Certified / Attesté | |
| **5. la Agenţia Resurse Informaţionale Juridice**<br>at/à | **6. pe data 11-01-2024**<br>the / le |
| **7. de către Grate Elena**<br>by/par | |
| **8. cu nr. ARIJBOCLU5ZXV4CF4**<br>No<br>sous no | |
| **9. Nu se aplică**<br>Not applicable<br>Pas aplicable | **10. Semnătura digitală:**<br>Digital signature:<br>Signature numérique: |

Această Apostilă certifică autenticitatea semnăturii, calitatea în care semnatarul a acţionat şi, dacă este cazul,
identitatea sigiliului sau a ştampilei.
Această Apostilă nu certifică conţinutul documentului pentru care a fost emis
[Utilizarea acestei apostile nu este valabilă în Republica Moldova]
[Această apostilă este semnată digital şi poate fi verificată la următoarea adresă: www.apostila.gov.md]

Codul de siguranţă: 1001886586843967

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed
the public document, and, where appropriate, the identity of the seal or stamp which the public document
bears.
This Apostille does not certify the content of the document for which it was issued.
[This Apostille is not valid for use anywhere within Republic of Moldova ]
[This Apostille is digitally signed and can be verified on the following address: www.apostila.gov.md]

Security code: 1001886586843967

Cette Apostille atteste uniquement la véracité de la signature, la qualité en laquelle le signataire de l'acte a
agi et, le cas échéant, l'identité Pdu sceau ou timbre dont cet acte public est revêtu.
Cette Apostille ne certifie pas le contenu de l'acte pour lequel elle a été émise.
[L'utilisation de cette Apostille n'est pas valable en République de Moldova]
[Cette Apostille est signée numérique et peut être vérifiée à l'adresse suivante: www.apostila.gov.md]

Code de sécurité: 1001886586843967



Pagina 1 din 1



Digitally signed by Grate Elena
Date: 2024.01.11 09:14:02 EET
Reason: MoldSign Signature
Location: Moldova

Dosarul nr. 2a-3408/22 (dosar electronic 2-20137649-02-2a-24082022)
*Judecătoria Chişinău, judecător Eugenia Culinca*

# D E C I Z I E

mun. Chişinău                                                          29 iunie 2023

Colegiul civil, comercial
şi de contencios administrativ al Curţii de Apel Chişinău
Preşedintele şedinţei, judecător                          Ana Panov
Judecătorii                                      Marina Anton şi Vitalie Cotorobai
Grefier                                                       Zoia Pleşca

     examinând, în şedinţă de judecată publică, apelurile declarate de Turuta Eugeniu şi Turuta Radu, împotriva hotărârii Judecătoriei Chişinău /sediul Centru/ din 9 iunie 2022, pronunţată în cadrul cauzei civile intentată la cererea de chemare în judecată înaintată de Turuta Eugeniu şi Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor, prin care acţiunea a fost respinsă, -

# c o n s t a t ă :

     La data de 3 noiembrie 2020, reclamanţii Turuta Eugeniu şi Turuta Radu s-au adresat cu cerere de chemare în judecată către pârâtul Cloudflare INC, solicitând să fie constatată încălcarea drepturilor patrimoniale de autor ale autorului Turuta Eugeniu şi titularului de drepturi de autor Turuta Radu la valorificarea operei (cărţii) „5000 integrated circuits power audio amplifiers" 2008 edition; prin intermediul site-ului https://doku.pub, responsabil compania Cloudflare INC; reieşind din mărimea remuneraţiei de autor (preţul de vânzare) pentru fiecare exemplar de carte (operă), dreptul de autor asupra căreia se încalcă şi de numărul de valorificări ilegale, în conformitate cu art. 63 alin. (2) lit. b) al Legii 139 din 02.07.2010, pentru încălcarea drepturilor patrimoniale de autor ale autorului Turuta Eugeniu şi titularului de drepturi de autor Turuta Radu (dreptul exclusiv la valorificarea operei, inclusiv prin reproducere, import, distribuire şi punere la dispoziţie în regim interactiv), să fie încasat din contul companiei Cloudflare INC în beneficiul autorului Turuta Eugeniu şi titularului de drepturi de autor Turuta Radu venitul ratat suportat: pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 64625 distribuiri x 16 euro = 1034000 euro.

     În motivarea cererii de chemare în judecată reclamantul Turuta Eugeniu a indicat, că este autor al mai multor cărţi din domeniul informării despre componentele electronice semiconductoare, în special a cărţilor: „5000 integrated circuits - power audio amplifiers", 2008 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2010 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2011 edition; „SMD codes. Active SMD Semiconductor Components Marking Codes", 2014 edition. Cărţile (operele) în cauză au fost create de către Turuta Eugeniu pe parcursul mai multor ani şi publicate (aduse la cunoştinţa publicului, puse în vânzare şi valorificate) prin site-ul http://www.turuta.md. Prin contractul de autor din 15 februarie 2008 Turuta Eugeniu a transmis către Radu Turuta prin licenţă neexclusivă drepturile sale patrimoniale de autor asupra operei (cărţii) „5000 integrated circuits - power audio amplifiers", 2008 edition în limitele prevăzute în contract. Astfel, din momentul semnării contractului de autor Turuta Radu este titular de drepturi neexclusive de autor asupra cărţii menţionate.

1



Reieșind din cele indicate și în conformitate cu prevederile art. art. 385 lit. c) și 389-390 Cod de procedură civilă Colegiul, -

**d e c i d e :**

Admite apelurile declarate de Turuta Eugeniu și Turuta Radu.

Casează hotărârea Judecătoriei Chișinău /sediul Centru/ din 9 iunie 2022, pronunțată în cadrul cauzei civile intentată la cererea de chemare în judecată înaintată de Turuta Eugeniu și Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor și, în pricină, pronunță o nouă hotărâre prin care:

Admite cererea de chemare în judecată înaintată de Turuta Eugeniu și Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor.

Se constată încălcarea drepturilor de autor ale autorului Turuta Eugeniu și titularului de drepturi de autor Turuta Radu la valorificarea operei (cărții) „5000 integrated circuits power audio amplifiers" 2008 edition prin intemedi-ul site-ului https://doku.pub, responsabil compania Cloudflare, Inc.

Încasează din contul companiei Cloudflare" INC în beneficiul lui Turuta Eugeniu și Turuta Radu venitul ratat suportat: Pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 79804 valorificăriX16 euro = 1276864 (un milion două sute șaptezeci și șase mii opt sute șaizeci și patru) euro.

Obligă compania Cloudflare, Inc. să publice pe cheltuiala sa pe site-ul său https://www.cloudflare.com hotărârea judecătorească integrală în limba engleză timp de 6 luni.

Încasează din contul companiei Cloudflare" INC în beneficiul statului taxa de stat în sumă de 25100 /douăzeci și cinci mii una sută/ MDL pentru examinarea cererii în instanța de fond și suma de 18825 /optsprezece mii opt sute douăzeci și cinci/ MDL, pentru examinarea cererii de apel.

Decizia este definitivă și executorie din data adoptării, dar cu drept de recurs la Curtea Supremă de Justiție în termen de două luni de la comunicarea deciziei integrale, prin intermediul Curții Supreme de Justiție.

| | | |
|---|---|---|
| Președintele ședinței Judecător | | Ana Panov |
| Judecătorii | | Marina Anton |
| | | Vitalie Cotorobai |

Corespunde originalului
... la data de 29.06.2023

E. Culinca
D. Donighevici

21



Total cusute    file

Specialist Ş.l.Donighevici

*Translate from romanian to english language*

File no. 2a-3408/22 (electronic file 2-20137649-02-2a-24082022)
*Chisinau District Court, Judge Eugenia Culinca*

## DECISION

Chisinau municipality                                        June 29, 2023

Civil, commercial college
and administrative litigation
of the Chisinau Court of Appeal

President of the session, judge              Ana Panov
Judges                                       Marina Anton and Vitalie Cotorobai
Clerk                                        Zoia Pleşca

examining, in a public court session the appeals declared by Turuta Eugeniu and Turuta Radu, against the decision of the Chisinau Court/Centre headquarters/ of June 9, 2022, issued in the context of the civil case filed on the summons request submitted by Turuta Eugeniu and Turuta Radu to Cloudflare INC regarding the copyright protection, whereby the request was dismissed, -
notes:

On November 3, 2020 the plaintiffs Turuta Eugeniu and Turuta Radu filed a summons issued to the defendant Cloudflare INC, soliciting to ascertain the copyright infringement and exploitation of the work (book) "5000 integrated circuits power audio amplifiers", 2008 edition, of the author Turuta Eugeniu and the copyright holder Turuta Radu through the website https://doku.pub, responsible company Cloudflare INC; resulting from the size of the author's remuneration (sale price) for each copy of the book (work), which copyright rights were violated, and the number of illegal exploitations, in accordance with art. 63 para. (2) lit. b) of Law 139 of 02.07.2010, for the violation of the author's patrimonial copyright rights of the author Turuta Eugeniu and the copyright holder Turuta Radu (the exclusive right to exploit the work, including through reproduction, import, distribution and making it available interactively), to be collected from Cloudflare INC account to the benefit of the author Turuta Eugeniu and the copyright holder Turuta Radu for the incurred income loss:

for the book "5000 integrated circuits power audio amplifiers" 2008 edition:

64625 distributions x 16 euros = 1034000 euros.

In justification of the summons request, the plaintiff Turuta Eugeniu indicated that he is the author of several books in the field of information about semiconductor electronic components, in particular of the books: "5000 integrated circuits - power audio amplifiers", 2008 edition; "SMD codes. Active SMD Semiconductor Components Marking Codes", 2010 edition; "SMD codes. Active SMD Semiconductor Components Marking Codes", 2011 edition; "SMD codes. Active SMD Semiconductor Components Marking Codes", 2014 edition. The books (works) in question were created by Turuta Eugeniu over several years and published (brought to the public's attention, put on sale and capitalized) through the website http://www.turuta.md. Through contract dted February 15, 2008, the author, Turuta Eugeniu transferred to Radu Turuta, his patrimonial copyright rights through a non-exclusive license over the work (book) "5000 integrated circuits - power audio amplifiers", 2008 edition, within the limits stipulated in the contract. Thus, from the moment of signing the author's contract, Turuta Radu is the holder of non-exclusive author's rights over the said books.

The plaintiff Turuta Eugeniu claims that, browsing the Internet, he found that on the website https://doku.pub (web address https://doku.pub/documents/5000-integrated-circuits-power-audio-amplifiers-data-bookpdf-5lw299zr4elj) was exploited (made available to the public interactively,

distributed and reproduced), without his consent as author the book "5000 integrated circuits - power audio amplifiers", 2008 edition. The plaintiff also noted that on the websites https://load-knigi.org and http.www/radiomaster.com.ua (web addresses https://load-knigi.org-radiodetaley-sbornik-knig.html and http://radiomaster.com.ua/9133-active-smd-semiconductor-components-marking-codes.html) were used (made available to the public interactively, distributed and reproduced) the books "SMD codes. Active SMD Semiconductor Components Marking Codes", 2010 edition, "SMDcodes. Active SMD Semiconductor Components Marking Codes", 2011 edition and "SMD codes. Active SMD Semiconductor Components Marking Codes", 2014 edition, without his consent as author. The data transmission of the sites https://doku.pub, https://load-knigi.org and http://radiomaster.com.ua was ensured (performed) by the defendant company Cloudflare INC.

The plaintiff Turuta Eugeniu claims that according to art. 66 para. (1) lit. a) of Law no. 139 of 02.07.2010 on copyright and related rights (violation of copyright and related rights through computer networks),

"Any natural or legal person who provides services of hosting and/or data transmissions (internet/intranet), including an internet-provider, upon their direct contribution to the infringement of copyright and/or related rights shall be deemed an accomplice and becomes responsible in the following situations, if: a) given the technical possibility of blocking, restricting the access and/or deleting, in due time, the objects published and/or used by actions infringing copyright and/or related rights, and notified about the violation concerned (with the indication of the specific object) by the holder of respective rights or his representatives, he does not act according to the rightholder's requests for blocking, restricting the access and/or deleting the indicated objects;".

The plaintiff claims, that in accordance with art. 66 para. (1) lit. a of Law no. 139 of 03.07.2010, exercising his right of copyrights protection, on August 11, 2020 he completed and sent to the defendant company Cloudflare INC the notification forms regarding copyright infringement, available on the website https://www.cloudflare.com/abuse/form (since the e-mail address for notices of copyright infringement is not available on the site), with information about his copyright infringement on the sites https://doku.pub, https://load-knigi.org and http://radiomaster.com.ua (web addresses https://doku.pub/documents/5000-integrated-circuits-power-audio-amplifiers-data-bookpdf- 5lw299zr4elj, https://load-knigi.org-radiodetaley-sbor-nik-knig.html and http://radiomaster.com.ua /9133-active-smd-semiconductor-components-marking-codes.html) with the request to stop illegal exploitation of works protected by the Copyright Law. On the same date, - August 11, 2020, the plaintiff received a response by e-mail containing three distinct sections, in which the defendant company Cloudflare INC, confirmed the receipt of the notifications, informed that it is not a hosting provider for the mentioned sites and that will inform its customers (sites owners of https://doku.pub. https://load-knigi.org and http://radiomaster.com.ua) about copyright infringement.

The plaintiff also declares that on October 31, 2020 (more than 2.5 months after communicating the defendant company about copyright infringement) he again accessed the websites https://doku.pub., https://load-knigi.org and http://radiomaster.com.ua (https://documents /5000-integrated-circuits-power-audio-amplifiers-data-bookpdf-5lw299zr4elj, https://load-knigi.org/ 10762-markirovka-radiodetaley-sbornik-knig.html and http://radiomaster. com.ua/9133-active-smd-semiconductor-components-marking-codes.html) and found that the use of books on the sites https://load-knigi.org and http://radiomaster.com.ua was blocked. However, the exploitation of the book "5000 integrated circuits - power audio amplifiers", 2008 edition on the website https://doku.pub had not stopped, the access to the book (work) "5000 integrated circuits - power audio amplifiers", 2008 edition was not blocked, so the copyright infringement continued, including until the date of the filing of the summons.

Turuta Eugeniu claims that art. 5 of the Berne Convention on the Protection of Literary and Artistic Works of 09.09.1866, ratified by the Parliament of the Republic of Moldova on 2 November 1995 provides the following: 1) Authors shall enjoy, in respect of works for which they are protected under this Convention, in countries of the Union other than the country of origin, the rights which their respective laws do now or may hereafter grant to their nationals, as well as the rights specially granted by this Convention; 2) The enjoyment and the exercise of these rights shall

not be subject to any formality; such enjoyment and such exercise shall be independent of the existence of protection in the country of origin of the work. Consequently, apart from the provisions of this Convention, the extent of protection, as well as the means of redress afforded to the author to protect his rights, shall be governed exclusively by the laws of the country where protection is claimed.

The plaintiff points out, that according to art. 9 para. (1) from Law no. 139 of 02.07.2010 on copyright and related rights, given the absence of evidence to the contrary, his copyright on the works (books) that are the subject of the litigation in this case is presumed: Art. 9 "In the absence of proof to the contrary, the natural person whose name appears on a work in the usual manner shall be deemed to be the author thereof.".

Art. 9 para. (1) norm from Law no. 139 of 02.07.2010 is complementary to art. 15 para. (1) of the Berne Convention, which says the following:

1) In order that the author of a literary or artistic work protected by this Convention shall, in the absence of proof to the contrary, be regarded as such, and consequently be entitled to institute infringement proceedings in the countries of the Union, it shall be sufficient for his name to appear on the work in the usual manner. This paragraph shall be applicable even if this name is a pseudonym, where the pseudonym adopted by the author leaves no doubt as to his identity.

According to art. 5 para. (3) of the Law on copyright and related rights no. 139 of 02.07.2010 the rights of the author Turuta Eugeniu consist of patrimonial rights and moral (personal non-patrimonial) author rights. According to art. 5 par. (5) of Law no. 139 of 02.07.2010, the patrimonial rights may belong either to the author or to another natural person or legal entity as the lawful owner of such rights (the rights holder), so the patrimonial rights of the author over the books in dispute also belong to the plaintiff Turuta Radu.

The plaintiff mentions that art. 11. para. (1) of Law no. 139 of 02.07.2010 defines the following ways of exploiting copyright objects: a) reproduction of the work; b) distribution of the original or copies of the work; i) interactive making available the work to the public.

Art. 3 of Law no. 139 of 02.07.2010 defines the following:

*distribution means* the putting into circulation by sale or other transfer of property of the original or copies of the work or objects of related rights, either against payment or without it, as well as public offer thereof for this;

*interactive making available to the public* means the making available of a work or an object of related rights, by wire or wireless means, in a way that members of the public may access it from a place, and at a time individually chosen by them;

*reproduction* means the making of one or more copies of a work or object of related rights either directly or indirectly, and either temporarily or permanently, in any form whatsoever, including an audio or video recording, and the temporary or permanent storage of a work or object of related rights in an electronic medium;

Thus, the plaintiff claims, that according to art. 30 of the Copyright Law and related rights no. 139 of 02.07.2010, 1) The exclusive economic rights as well as the rights to remuneration of authors, unless otherwise provided in this Law, may be assigned by the authors or other holders of copyright by means of a copyright contract. As a result of such assignment, the assignee shall be the holder of rights.

2) In respect of the exclusive economic rights, unless otherwise provided in this Law, also licenses may be granted either in the form of an exclusive license or in the form of a nonexclusive license. If in a license contract, it is not stipulated that it is exclusive, the license shall be deemed to be non-exclusive.

4) Under a non-exclusive license, the licensee, within the limits laid down in the contract, may use the work in the same way as other persons who have obtained authorisation to use it. He shall not have the right to authorise or prohibit the use of the work by other persons.

The plaintiff claims that according to art. 5 paragraph (5) of Law no. 139 of 02.07.2010 the patrimonial rights may belong either to the author or to another natural person or legal entity as the lawful owner of such rights (the rights holder). Thus, the author's patrimonial rights over the books

in dispute also belong to the plaintiff Turuta Radu, within the limits of the rights transferred according to the author's contract of February 15, 2008.

Art. 54 of Law no. 139 of 02.07.2010 establishes liability for copyright infringement:

1) Any use of an object of copyright, related rights or other rights protected by this Law that is performed in violation of the provisions of this Law shall be regarded an infringement.

2) Any copy of an object of copyright, related rights or other rights protected by this Law the reproduction, importation, distribution, rental or lending of which constitutes an infringement under paragraph (1) of this article shall be regarded an infringing copy.

3) The possession, for commercial purposes of a copy or an object of copyright, related rights or other rights protected by this Law shall be regarded also an infringement.

4) In case of infringements and in respect to infringing copies, the provisions of this chapter and concerning administrative, customs and criminal measures, procedures, remedies and sanctions – the relevant provisions of the corresponding laws shall apply. Procedural provisions of this Law shall be supplemented by common law.

The plaintiff added that according to art. 476 of the Civil Code, An object of intellectual property is any result of intellectual property, confirmed and protected by corresponding usage rights.

2) Objects of intellectual property are of two types: a) objects of industrial property (inventions, plant varieties, topographies of integrated circuits, trademarks, industrial designs, geographical indications, designations of origin, and guaranteed traditional specialties); b) objects of copyright (literary, artistic, and scientific works, etc.) and related rights (performances, phonograms, videograms, and shows of broadcasters, etc.).

5) Under the law, the holder of the right to the object of intellectual property: a) may transfer its right by assignment; b) may allow its use by third parties through an exclusive or non-exclusive license; c) may exercise other moral and pecuniary rights provided by law regarding the object of the exclusive right.

6) Save as otherwise provided by law, no person may exploit the right to another's intellectual property without an appropriate license. A license is presumed non-exclusive unless expressly provided otherwise.

7) A right to the object of intellectual property and a right granted by a license are treated as intangible property and may be encumbered with limited proprietary rights (*jus in rem*) for the benefit of third parties.

The plaintiff states that according to the extract from the website https://doku.pub/documents/5000-integrated-circuits-power-audio-amplifiers-data-bookpdf-5lw299zr4elj the book "5000 integrated circuits power audio amplifiers", 2008 edition" was used (made available to the public interactively, distributed and reproduced) 64,625 times. After the notification to the defendant about the copyright infringement on the work (book) - "5000 integrated circuits power audio amplifiers", the defendant company Cloudflare INC did not comply with the legal requirements of the author and did not block, restrict access and/or delete the indicated objects (book), and its illegal capitalization continued, including until the date of filing the summons. The company Cloudflare INC actually provides data transmission services over the Internet to third parties, including the owners of the website https://doku.pub.

Turuta Eugeniu reveals that art. 66. para. (1) of Law no. 139 of 02.07.2010 establishes that

1) Any natural or legal person who provides services of hosting and/or data transmissions (internet/intranet), including internet-provider, upon their direct contribution to the infringement of copyright and/or related rights shall be deemed accomplice and becomes responsible in the following situations, if:

a) given the technical possibility of blocking, restricting the access and/or deleting, in due time, the objects published and/or used by actions infringing copyright and/or related rights, and notified about the violation concerned (with the indication of the specific object) by the holder of respective rights or his representatives, he does not act according to the rightholder's requests for blocking, restricting the access and/or deleting the indicated objects.

The plaintiff indicates that the documents attached to the application certainty prove that the defendant company was notified by the author about the copyright infringement on the website https://doku.pub, indicating the concrete objects. The defendant company through a formal response declared that it received the notifications, but in reality, it did not comply with the provisions of art. 66. para. (1) of Law no. 139 of 02.07.2010, it did not fulfill the requirements of the copyright owner (plaintiff) and it did not block, restrict access and/or delete the indicated objects, therefore it is considered an accomplice and bears responsibility for the violation of these rights. Under the respective conditions, the illegal reproduction and distribution from the website https://doku.pub of the work protected by the Copyright Law infringes the co-plaintiffs' copyright and causes serious material damages. Thus, according to art. 55 para. (1) and 2 letters a) of Law 139 of 02.07.2010 co-plaintiffs shall have the right to initiate a proceeding at the competent judicial body or other enforcement authority with the request to establish by court decision the violation of the author's patrimonial rights on the work in dispute (responsible - the company Cloudflare INC) with the collection from the defendant account on the account of the co-claimants the incurred material damage.

Turuta Eugeniu reiterates that according to art. 63 of Law 139 of 02.07.2010,

1) Within the infringement proceedings, the persons mentioned in Article 55 paragraph (2) may request the judicial authorities or other competent bodies, as appropriate, to acknowledge their rights, state the infringement of their rights, re-establishment of the existing situation before infringement of rights and cessation of actions involving infringement of rights or creating the risk of their infringement, and compensate the damages.

2) When the judicial authorities set the damages, they shall take into account the necessity to:

a) recover the losses, including the lost revenue, incurred by the injured party;

b) surrender any unfair profit made by the infringer;

c) pay a compensation of between 500 and 500.000 Moldovan Lei for each infringed right.

The situation existing before the violation of the right can be restored only by recovering the losses caused to the author Turuta Eugeniu and the rights holder Turuta Radu.

The plaintiff claims that according to art. 16 Civil Code paragraph (1) letter b), the defense of the civil right is done, in accordance with the law, by:

b) recoveries of the provision existing before violation of the right, and suppression of the actions violating the right or creating threat of its violation;

According to the art. 19 of the Civil Code,

1) the party, whose right or legitimate interest are violated, can require according to the law the full recovery caused to it with respect thereto of property or non-property damage.

2) *property damage is understood as expenses* which the restrained person made or will shall make for recovery violated the right or legitimate interest, destruction or damage of its property (actual damage), *and also uncollected profit which this person would receive if its right or legitimate interest were not violated (lost profit).*

5) Compensation of damage implies recovery of the restrained person in that provision in which it would be if the damage was not caused to it.

Likewise, the plaintiff declare's that the number of copies of the illegally exploited book (made available to the public interactively, distributed and reproduced) as of October 31, 2020 on the website https://doku.pub is as follows: The book "5000 integrated circuits power audio amplifiers", 2008 edition - was 64625 copies. The book sale price (which, according to the author's contract of February 15, 2008, constitutes the remuneration for the transfer of ownership of the book to the buyer) and which is confirmed by the payment receipt received by the plaintiffs through the PayPal payment system, is as follows: "5000 integrated circuits power audio amplifiers", 2008 edition, - 16 Euro. Thus, the lost income borne by the injured party (plaintiffs) is as follows: "5000 integrated circuits power audio amplifiers", 2008 edition: 64625 capitalizations x 16 euros = 1034000 euros.

Through the request of April 11, 2022, the plaintiffs Turuta Eugeniu and Turuta Radu increased the amount of their claims in the action, requesting the finding of copyright rights infringement of the author Turuta Eugeniu and the copyright holder Turuta Radu from exploiting the work (book) "5000 integrated circuits power audio amplifiers" 2008 edition through the website

https://doku.pub, responsible company Cloudflare INC; resulting from the ammount of the author's remuneration (sale price) for each book copy (work), the copyright that is violated and the number of illegal exploitations, in accordance with art. 63 para. (2) lit. b) of Law 139 of 02.07.2010, for the infringement of the author's patrimonial rights of the author Turuta Eugeniu and the copyright holder Turuta Radu (the exclusive right to exploit the work, including through reproduction, import, distribution and making it available interactively), to be collected from the account of the company Cloudflare INC for the benefit of the author Turuta Eugeniu and the copyright holder Turuta Radu the lost income incurred: for the book "5000 integrated circuits power audio amplifiers" 2008 edition: 79804 distributions x 16 euros = 1276864 euros.

By the decision of the Chisinau Court/Center headquarters/ of June 9, 2022, the summons submitted by Turuta Eugeniu and Turuta Radu was rejected as unfounded.

In justifying of the given solution, the trial court noted that the defendant company "Cloudflare, Inc" is not a company that provides to the website https://doku.pub, which directly distributes and reproduces the author's work, the hosting and/or transmission services (internet/intranet), including internet provider services. Thus, the defendant cannot be considered complicit in copyright infringement, considering that the legal conditions provided for in art. 66 para. (1) from Law no. 139/2010, not having demonstrated that it is the hosting company of the website https://doku.pub, or provides it with data transmission services (internet/intranet), including internet-provider, since it has been established that is a company that provides cyber security services and is not responsible for the content transmitted over the company's network. Therefore, the court concluded that there are no grounds to consider that "Cloudflare, Inc" violated the patrimonial rights of the plaintiffs, and respectively, to be held patrimonially liable by collecting some amounts in the form of lost income.

Disagreeing with the decision of the trial court, on June 13, 2022, the plaintiffs Turuta Eugeniu and Turuta Radu, through the record and procedural documentation section of the trial court, appealed the decision of the first court, requesting the admission of the appeal request, the dismission of the decision of the trial court and issuing a new decision admitting the action in full.

By the conclusion of the Civil, Commercial and Administrative Litigation Board of the Chisinau Court of Appeal on September 8, 2022, the appeal declared by Turuta Eugeniu and Turuta Radu was accepted for examination and the appeal procedure was initiated.

In motivating the appeal, the appellants Turuta Eugeniu and Turuta Radu indicated that the first court based its decision on the fact that the defendant company does not provide hosting services, it only provides reverse proxy services and pass security and does not verify the content of websites. The finding in question emerged from the response provided by the company Cloudflare INC and the provisions of the usage policies published on the official website of Cloudflare INC.

The appellants claim that the respective finding is erroneous, illegal and issued in violation of the provisions of the law regarding the limits of the trial of the case by the court, moreover, being evident the violation of the principle of impartiality by the court. Or, according to art. 26 CPC, enshrines both the principle of adversariality and equality of the parties in the process, as well as the principle of impartiality of the court:

"Civil trials are conducted on the principle of adversariality and equality of the parties in procedural rights. Contradiction requires the organization of the process so that the parties and other participants in the process have the opportunity to formulate, argue and prove their position in the process, to choose the ways and means of supporting it independently and independently of the court, other bodies and persons, to express his opinion on any issue of fact and law that is related to the case given to the trial and to express his point of view on the initiatives of the court. The court that judges the case preserves its impartiality and objectivity, creates conditions for the exercise of the rights of the trial participants, for the objective investigation of the real circumstances of the case". However, the trial court, without any requests from the trial participants, by accessing the website of the defendant company https://cloudflare.com, outside the court session actively sought evidence in its favor, giving clear evidence of lack of impartiality towards the complainants. Moreover, the text on the website of the defendant company being exclusively in English, it is not clear who and which translator ensured the translation of the text from English to Romanian for the judge. During the court hearings, the circumstances regarding the provision of the transmission

service by the defendant company or its quality as an internet provider in general were not examined.

The appellants state that the respondent company has stated that it does not provide hosting services but provides reverse proxy services. But neither in the file, nor in the minutes of the court hearings, nor on the website https://cloudflare.com is there any information or statement by the defendant company such that it does not provide data transmission services or that it is not an internet provider. And from the fact, that the defendant company provides reverse proxy services, it in no way follows that this service excludes data transmission service or that the person providing reverse proxy services is not an Internet provider. The reverse proxy service is a technical (technological) service and does not represent a legal provision, or evidence in a civil case, which the court could interpret or give appreciation to in its intimate conviction. In order to conclude, that a reverse proxy service does not represent a data transmission service, only the conviction of the court is not enough. For this, thorough technical arguments are needed, presented by specialists in the respective field, but they do not exist and cannot exist, because a reverse proxy service is at the same time a data transmission service between the server (computer) on which the site is located accessed and the end user. Moreover, once the court accessed the website https://cloudflare.com of the defendant company for information, it could not help but notice that the defendant company calls itself all its services as CDN (abbreviation from Content Delivery Network, in Romanian the Content Delivery Network). Thus on the website https://developers.cloudflare.com of the defendant company, the company informs its customers about the way to configure the CDN service. And from online encyclopedia Wikipedia, following information it is found about the company Cloudflare Inc.: Cloudflare INC is a US company that provides content delivery, security and distributed internet domain name services, standing between the visitor and the Cloudflare user's hosting provider, acting as a reverse proxy for websites of Internet. The same online encyclopedia Wikipedia describes Internet service providers (service-providers) as companies or organizations that provide connection and access to the Internet and services. They are often called "ISP", the initials of the English name Internet Service Provider. Physical access to the Internet can be via dial-up phone line, leased line access, ISDN phone line, ADSL phone line, cable (TV), radio, GSM mobile phone system, mobile phone system UMTS, satellite, etc. The services offered can be Internet transit services, domain name registration, colocation, etc. Because the infringement of the copyright of the co-claimants on the disputed work through the website https://doku.pub has not stopped until now, and on August 11, 2022 the author Turuta Eugeniu sent a new notification to the defendant company Cloudflare Inc. On the same date, Cloudflare INC confirmed receipt of the notice and explained that it provides network service solutions, including gateway security services, is a content distribution network (CDN), i.e. data transmission and recording services. Due to the broadcast nature of its services, the Company's IP addresses appear in WHOIS and DNS records for websites that use Cloudflare. Cloudflare cannot remove materials from the Internet hosted by others, but based on the pass security service (creating specific filters) it is certain that the company Cloudflare INC had and has the technical possibility to block access to certain objects (works protected by copyright author) that they transmit from the hosting servers to the end users.

The appellants believe that according to the technical explanations reproduced above, the only conclusion that can exist is that the defendant company Cloudflare INC offers content delivery services, i.e. data transmissions and is an internet service provider. The conclusion in question is confirmed by two decisions of the European Union Courts regarding Cloudflare INC. In case 1-6 U32/20, Universal Music vs Cloudfare on 9 October 2020 the OLG Koln (Supreme Court of Cologne, Federal Republic of Germany) confirmed the blocking order, which compels Cloudflare (the defendant) to prevent third parties from making available to the public a music album through certain websites and domain name servers. Cloudflare was also ordered to provide Universal Music (the plaintiff) with information about the name and address of the website operator. In reaching this conclusion, the Supreme Court held that Cloudflare did not take adequate steps to stop infringing activities occurring through its content delivery network (CDN) and DNS (name server of domain). The Supreme Court in Koln reasoned that the defendant's appeal was unfounded and that the defendant did not object to the regional court's assumption that, as a CDN service provider, it was

jointly responsible for making the music album in question publicly accessible via the website web ddl-music.to. According to the Court, despite the fact that the defendant itself did not operate the website and did not set the hyperlinks, it had contractually taken over the role of website operators to act as a CDN server for the website and therefore contributed to adequately to the causal violation of the law. That thing gave rise to liability for trespass as a nuisance. For the Court, the defendant's contribution was that it intervened in the data traffic between the client's website and users, so that all internet traffic to and from the client's website circulated through the defendant's server network. The activation of the defendant's server was therefore sufficient cause for the illegal public access to the music album in question through the customer's website. The Court also held that, as the defendant's business model was initially objectively neutral and socially desirable, a general obligation to audit and monitor the content of its customer domains would be disproportionate. However, the defendant had specific knowledge of the illegal activity and, from that moment on, was required to refrain from contributing to the illegal activities. For 8 months the defendant did not react and therefore an injunction was confirmed.

The appellants state, that in ordinance no. 42163/2019 R.G. Sky Italia, Lega Serie A vs Cloudflare Inc. and others, on October 5, 2020 the Court of Milan (Republic of Italy) confirmed a dynamic blocking order ordering the blocking of the current and future domain names and IP addresses of several Internet Protocol Television (IPTV) services for the distribution illegal audiovisual content. The decision involved major Italian Internet Service Providers (ISPs), along with hosting provider "OVH" and content delivery network (CDN) operator Cloudflare INC. While Cloudflare INC argued that it cannot be held liable for hosting infringing content, the Court considered that this service qualifies as an intermediary under Article 156 et seq. of the Italian Copyright Law (putting pursuant to Article 8 paragraph (3) of Directive 2001/29/EC), against which an order could be issued, regardless of any personal liability. The court also clarified the scope of the dynamic blocking order, inviting rights holders to notify service providers of new IP addresses and domains to extend the blocking order to cover future infringements. Cloudflare INC argued that the Court lacked jurisdiction over the case. It also claimed that it was only providing a transient data storage service and therefore could not be held responsible for directly hosting the infringing content. The court rejected the defendant's claims. First, the Court stated that his conduct "could facilitate, by the mere activity of storing static data, the activity of third parties who infringe copyright." Second, the Court ruled that an injunction could be issued against Cloudflare INC and others under Article 156 of the Italian Copyright Law and Article 669 bis et seq. of the Italian of Civil Procedure Code. It also emphasized that the classification between providers of hosting, caching and simple data transmission services is irrelevant, provided that the possibility of issuing an injunction against an intermediary based on the above provisions does not depend on the liability of the intermediary for the (alleged) of copyright infringement.

The appellants note, that based on the arguments presented above and the decisions of the EU courts (which have sufficient authority to be taken into account), the appeals court should find that the conclusion of the trial court, regarding the responsibility of the company Cloudflare INC is erroneous and illegal. Thus, the defendant company provides data transmission services, including being an internet provider, it has the technical possibility to block access to the work in dispute, until now it has not executed the requirements of the author of the work in dispute regarding the blocking of the indicated work, therefore it is considered an accomplice and carries full liability for the infringement of the plaintiffs' copyright, as provided in art. 66 of Law no. 139 of 02.07.2010, a natural or legal person that provides hosting and/or data transmission services (internet/intranet), including internet-provider, is considered an accomplice when it directly contributes to the violation of copyright and/or related rights and is liable for the violation of these rights in the following cases:

a) if, having the technical possibility to block, restrict access and/or delete in a timely manner the objects that are published and/or used in violation of copyright and/or related rights and being notified by the holder of the respective rights or its representatives (with the indication of the concrete object) about the violation in question, did not execute the requirements of the owner of

the copyright and/or related rights regarding blocking, restricting access and/or deleting the indicated objects.

The appellants indicate, that the subsequent conclusions of the first court regarding various circumstances of the case are also illegal, because they were issued with the erroneous application of the law. The court notes that, "At the same time, Turuta Eugeniu noted that since Cloudflare INC does not have the ability to remove content from the website, it is its practice to send complaints of abuse to entities such as the hosting provider and/or the owner of the website to track them, by checking the option: to send the report to the hosting provider of the website, and the option; to forward the report to the owner of the website". It is a totally erroneous finding, because Eugeniu Turuta did not note and could not note that Cloudflare INC does not have the ability to remove content from the website, it is their practice to send complaints of abuse to entities such as the hosting provider and/or the website owner to track them. That information is preset (found) on the notification form and does not mean that Eugeniu Turuta agrees with it. Moreover, Turuta Eugeniu is sure that the said information misleads the people who notify the defendant company about its copyright infringements.

The appellants state that the trial court rejects as declarative and without evidentiary support the allegations of the plaintiffs regarding the provision by the company Cloudflare INC of the transmission services provided via the internet to the website https://doku.pub, not having presented any pertinent and conclusive evidence in this regard, in the circumstances in which the defendant company informed that it is only a reverse proxy service, pass security and does not verify the content of websites. The court's finding is incorrect. The company Cloudflare INC does not provide data transmission services over the internet to the https://doku.pub website, but it provides data transmission services between the https://doku.pub website and the end users, this fact being confirmed by Cloudflare itself INC, which declares that it is a transit network and found by the court on page 8 of the decision. However, only information, or in other words data, can pass through a transit network, because physical objects cannot pass through the network. Moreover, if the court had certain doubts regarding the mode of operation of the crossing network, it, in accordance with art. 118 par. 5 CPC was entitled to propose to the plaintiffs to present additional evidence, "The court (judge) is entitled to propose to the parties and other participants in the trial, as appropriate, to present additional evidence and to prove the facts that constitute the subject of the probation in order to convince of their truthfulness". Thus, the first court failed to apply the relevant legal provision and rejected the plaintiffs' allegations regarding the granting by the company Cloudflare INC of the data transmission services, basing its solution only on assumptions.

The appellants point out, that the court attests to the fact that the plaintiff did not present evidence that would confirm the fact that he sent a report to the owner of the website https://doku.pub, who directly claims to be the copyright infringer through the distribution of the nominated book, or its hosting company, indicated by the company that could be considered an accomplice and that directly contributes to copyright infringement. The first instance certifies a fact that is not provided for by law. Indeed, art. 66 of Law no. 139 of 02.07.2010 provides for the notification of copyright infringement only to the natural or legal person who provides hosting services or data transmissions, including internet-provider, and the right to select that person belongs exclusively to the copyright holder. The substantive court finds that in the case, the defendant company, although it was found that it offers reverse proxy and cyber security services and not hosting, data transmission (internet/intranet), internet provider, upon notification took actions regarding the liquidation copyright infringement, as access to the author's work is restricted on the websites https://load-knigi.org and http://radiomaster.com.ua, and with reference to the website https://doku.pub a informed the petitioner about the impossibility of the restriction, directly indicating the hosting company of the website https://doku.pub, but also the address to which he can go to notify the abuse. It is a finding contrary to the law, or, art. 66 of Law no. 139 of 02.07.2010 expressly provides that upon receiving a notification, indicating the concrete object, the notified person is obliged to fulfill the requirements of the owner of the copyright and/or related rights regarding blocking, restricting access and/or deletion of the indicated objects, but not to inform about circumstances irrelevant to the case.

To the appeal requests declared by Turuta Eugeniu and Turuta Radu, the respondent "Cloudflare" INC did not present the reference.

In the court session established in the court of appeal, the appellant Turuta Eugeniu requested the admission of the appeal request, the cancellation of the decision of the court of first instance and the issuance of a new decision to fully admit the action.

The appellant Turuta Radu and the respondent Cloudflare INC did not appear at the court hearing, despite their legal notices, as a result of the indicated moments and in accordance with the provisions of art. 379 para. (1) of Civil Procedure Code, the College ordered the examination of the case in their absence.

Analyzing the legitimacy and merits of the contested decision, through the prism of the arguments invoked by the participants in the trial and the materials in the file in conjunction with the relevant applicable legal framework, the College considers the appeal declared by Turuta Eugeniu and Turuta Radu as well-founded and to be admitted, with the cancellation the decision of the first instance court and issuing a new decision admitting the action in full, for the following reasons.

### The deadline for declaring the appeal request.

In accordance with art. 362 para. (1) of Civil Procedure Code, the term for declaring the appeal is 30 days from the date of the pronouncement of the operative part of the decision, unless the law provides otherwise.

As indicated above, the appellants Turuta Eugeniu and Turuta Radu filed their appeal on June 13, 2022, contesting the decision of the Chisinau Court /Centre headquarters/, the order of which was pronounced on June 9, 2022. Thus the Board certifies and states, that the appeal was declared within the term granted by the Law.

### The relevant legal framework applicable to the case.

In accordance with art. 385 lit. c) of Civil Procedure Code, the court of appeal, after judging the appeal, has the right to admit the appeal and cancel the decision of the first court in whole or in part, issuing a new decision.

According to the provisions of art. 118 para. (1) of Civil Procedure Code, each party must prove the circumstances it invokes as the basis of its claims and objections, unless the law provides otherwise.

Article 130 para. (1) Civil Procedure Code, states that the court evaluates the evidence according to its intimate conviction, based on the multi-aspectual, complete, impartial and direct investigation of all the evidence in the file as a whole and their interconnection, guided by the law.

Pursuant to art. 240 paragraph (1) Civil Procedure Code, when deliberating the decision, the court assesses the evidence, determines the circumstances that are important for the settlement of the cases, which have been established or not, the nature of the legal relationship between the parties, the law applicable to the settlement of the case and the admissibility of the action.

In accordance with Art. 373 of the Civil Procedure Code, the court of appeal verifies, within the limits of the appeal request, the references and objections submitted, the legality and validity of the challenged decision in terms of ascertaining the factual circumstances and the application of the law in the first instance.

Within the limits of the appeal, the court of appeal verifies the circumstances and legal relationships established in the first instance decision, as well as those that were not established, but which are important for the resolution of the case, evaluates the evidence in the file and those additionally presented in the appellate court by the participants at trial. The appellate court is not bound by the reasons for the appeal regarding the legality of the decision of the first instance, but is obliged to verify the legality of the decision in its entirety. At the same time, the appellate court is obliged to rule on all the grounds invoked in the appeal.

Thus, the expressly stated legal provisions oblige the court of appeal to verify the circumstances and legal relationships established in the decision of the first court, as well as those that have not

been established, and it is obliged to verify the legality of the decision in its entirety and rule on all the reasons invoked in appeal.

From the content of what has been reported, the College notes that the task of the court of appeal derives from the provisions of art. 373 of the Civil Procedure Code, in the conditions in which the court of first instance resolved the merits of the case, with the presentation of the arguments in order to admit or reject the action in relation to the conclusions retained by it.

The college notes that the court of appeal, according to the rules of a fair trial, retaining the determining role of its conclusions, has the obligation to effectively examine the essential issues that are subject to its assessment and not to limit itself to appropriating the reasons of the lower court (HirroBalani v. Spain, no. 18064/91 of 09.12.1994 §27; Georgiadis vs. Greece no. 21522/93 of 29.05.1997 §43).

According to the provisions of art. 5 para. (1) of Civil procedure code, any interested person has the right to apply to the court, in the manner established by law, to defend his violated or contested rights, freedoms and legitimate interests.

According to art. 9 para. (2) lit. e) of Civil Code, civil rights and obligations arise as a result of creation of intellectual property items.

According to art. 21 of Civil Code, the personal non-property rights and other non-material benefits are protected in the cases and procedure provided by this code and particular licensees; c) collective management organisations having a right to represent holders of copyright or related rights; d) professional defence bodies and other representatives of rightholders and licensees.

(3) The judicial bodies and other enforcement authorities shall apply the measures, procedures and remedies provided for in this chapter in a fair an equitable manner in a way that they are not unnecessarily complicated or costly and do not entail unnecessary time-limits or unwarranted delays. The application of these measures, procedures and remedies shall be effective, proportionate and dissuasive and shall be applied in such a manner as to avoid the creation of barriers to legitimate trade and to provide for safeguards against their abuse.

According to art. 5 para. (3) from Law no. 139 regarding copyright and related rights, Copyright shall comprise prerogatives of economic nature and prerogatives of moral nature.

At the same time, article 10 of Law no. 139 regarding copyright and related rights, states that the (1): An author of a work shall enjoy the following moral rights: a) the right of authorship – the right to be acknowledged as the author of his work and the right to require such acknowledgement, including by placing his name on all copies of the published work or referring to his name in connection with any other public use, in the usual manner, except where this turns out to be impossible, and unless the absence of the obligation to indicate the name of the author follows from other provisions of this Law. b) the right to be named – the right of the author to decide how he is to be designated in relation to use of his work (by his true name, pseudonym or anonymously); c) the right to respect for the integrity of his work – the right to protection of his work against any distortion, mutilation or other derogatory act liable to prejudice his honor and reputation as an author; d) the right to disclose his work – the right to decide on the disclosure of the work, in what form and at what time; e) the right of withdrawal of his work – the right of the author to withdraw his work from the trading network, provided that the author pays in advance the damages resulting from this action, if any, incurred by the holder of right to exploit the work.

(2) Moral rights shall not constitute the object of renunciation or cession as they are inalienable. The author shall maintain his moral rights also when he transfers his economic rights.

According to art. 11 par. (1) from Law no. 139 regarding copyright and related rights:

1) An author or other holder of copyright shall enjoy the exclusive right to perform, to authorize or prohibit the following acts: a) reproduction of the work; b) distribution of the original or copies of the work; c) rental of the copies of the work, except for the works of sculpture and works of applied art; d) importing of copies of the work for the purposes of distribution, including copies made with the authorization of the author or other holder of copyright; e) presentation of the work in public; f) public performance of the work; g) communication of the work by air to the public, including satellite (broadcasting by television and radio), or by cable; h) simultaneous retransmission and without modifications, by air or cable, of the work transmitted by air or cable; i)

interactive making available the work to the public;; j) translation of the work; k) transformation, adaptation, arrangement or any other modifications of the work, except where the actions under letters a)-k) do not correspond to the form of expression of the work, or in relation to which no sanctions can be prescribed.

According to art. 54 par. (1) and (4) of Law no. 139 regarding copyright and related rights, any use of an object of copyright, related rights or other rights protected by this Law that is performed in violation of the provisions of this Law shall be regarded an infringement. In case of infringements and in respect to infringing copies, the provisions of this chapter and concerning administrative, customs and criminal measures, procedures, remedies and sanctions – the relevant provisions of the corresponding laws shall apply. Procedural provisions of this Law shall be supplemented by common law.

Based on art. 63 para. (1) from Law no. 139 regarding copyright and related rights:

1) Within the infringement proceedings, the persons mentioned in Article 55 paragraph (2) may request the judicial authorities or other competent bodies, as appropriate, to acknowledge their rights, state the infringement of their rights, re-establishment of the existing situation before infringement of rights and cessation of actions involving infringement of rights or creating the risk of their infringement, and compensate the damages.

At the same time, paragraph (2) of the same article, expressly provides that when the judicial authorities set the damages, they shall take into account the necessity to: a) recover the losses, including the lost revenue, incurred by the injured party; b) surrender any unfair profit made by the infringer; c) pay a compensation of between 500 and 500.000 Moldovan Lei for each infringed right.

As per art. 66 par. (1) point. a) of Law nr. 139 from 02.07.2010, any natural or legal person who provides services of hosting and/or data transmissions (internet/intranet), including internet-provider, upon their direct contribution to the infringement of copyright and/or related rights shall be deemed accomplice and becomes responsible in the following situations, if: a) given the technical possibility of blocking, restricting the access and/or deleting, in due time, the objects published and/or used by actions infringing copyright and/or related rights, and 36   notified about the violation concerned (with the indication of the specific object) by the holder of respective rights or his representatives, he does not act according to the rightholder's requests for blocking, restricting the access and/or deleting the indicated objects.

At the same time, art. 3 of Law no. 139 regarding copyright and related rights, defines the following notions: distribution - means the putting into circulation by sale or other transfer of property of the original or copies of the work or objects of related rights, either against payment or without it, as well as public offer thereof for this; work - means the result of original intellectual creation in the field of literature, arts and science, irrespective of the means of its making, of the concrete manner and form of its expression and of its merit and importance; reproduction - means the making of one or more copies of a work or object of related rights either directly or indirectly, and either temporarily or permanently, in any form whatsoever, including an audio or video recording, and the temporary or permanent storage of a work or object of related rights in an electronic medium; use - means any act covered by copyright, related rights or other rights protected by this Law.

According to art. 9 para. (1) of the Bern Convention on the Protection of Literary and Artistic Works of September 9, 1866 signed by the Republic of Moldova on November 2, 1995, the authors of literary and artistic works protected by this Convention shall have the exclusive right of authorizing the reproduction of these works, in any manner or form.

Para. (2) art. 9 of the Convention provides that it shall be a matter for legislation in the countries of the Union to permit the reproduction of such works in certain special cases, provided that such reproduction does not conflict with a normal exploitation of the work and does not unreasonably prejudice the legitimate interests of the author.

*The facts and circumstances of the case. Appreciation of the Appeal court.*

From the evidentiary support presented in the case documents, it follows that Turuta Eugeniu is the author of several books in the field of information of semiconductor electronic components, especially the books: 5000 integrated circuits - power audio amplifiers, 2008 edition; SMD codes. Active SMD semiconductor components marking codes, 2010 edition; SMD codes. Active SMD semiconductor components marking codes, 2011 edition; SMD codes. SMD and published assets (brought to the public's attention, put on sale and capitalized) through the website http://www.turuta.md.

Through the author's contract dated February 15, 2008, Turuta Eugeniu transferred to Radu Turuta, a non-exclusive license, patrimonial copyright rights over the work (book) 5000 integrated circuits - power audio amplifiers, 2008 edition within the limits stipulated in the contract.

In the case, is also noted that on August 11, 2020, the plaintiff Turuta Eugeniu, as the author of the books: "5000 integrated circuits - power audio amplifiers", 2008 edition; "SMD codes. Active SMD Semiconductor Components Marking Codes", 2010 edition; "SMD codes. Active SMD Semiconductor Components Marking Codes", 2011 edition; "SMD codes. Active SMD Semiconductor Components Marking Codes", 2014 edition, addressed to "Cloudflare, Inc", by filling out the forms on its website, informing the defendant company about copyright infringement on the sites https://doku.pub, https://load-knigi.org and http://radiomaster.com.ua, through the illegal distribution of books whose author he is, by submitting the request to acknowledge in good faith that use of the material in the report is not authorized by the copyright owner, its agent, or the law; and that he is authorized to act on behalf of the copyright owner; and understand that pursuant to 17 U.S.C.&sect. 512(f), may be liable for any damages, including costs and attorneys' fees, if it knowingly defamed the reported materials.

It was also found that on the same date of August 11, 2020, Cloudflare INC's Abuse Service confirmed that it had received the complaint submitted by Turuta Eugeniu regarding copyright infringement through the website https://load-knigi.org, informing the petitioner that, "Cloudflare INC is a network provider that provides a reverse proxy service, pass-through security, is not a hosting provider, does not control their customers content. It indicated the supported URLs on https://loadknigi.org: https://load-knigi.org/17062-radiodetaley-knig.html; informing that, the hosting- provider is DATE ON-LINE, with abuse contact details: abuse@server-panel.net. With reference to the notice of copyright infringement through the site http://radiomaster.com.ua, Cloudflare INC's Abuse Service also informed that it is a network provider that provides a reverse proxy service, pass security, is not a hosting provider, does not control the content of their customers. It indicated the accepted URLs on http://radiomaster.com.ua: http://radiomaster.com.ua/9133-active-smd-semicon-ductorcomponent-marking-codes.html; informing that the hosting provider is BESTHOSTING-AS, with abuse contact details: abuse@besthosting.ua. At the same time, Cloudflare INC's Abuse Service confirmed that it received the copyright infringement complaint through doku.pub site, reiterating the same claims that Cloudflare INC is a network provider that provides a reverse proxy service, pass security, is not a hosting provider, does not control the content of their customers. It indicated the supported URLs on doku.pub: https://doku.pub/documents/5000-integrated-circuits-power-audio-amplifiers-data-bookpdf-lw299zr4elj; informing that the hosting provider is OVH, with abuse contact details: abuse@ovh.net. The petitioner was informed that the company's customers were notified of the report, but also that the report was sent to the responsible hosting provider. At the same time, it was communicated that it can direct the report to: 1. The hosting provider where doku.pub is hosted; 2. The owner listed in the WHOIS record for doku.pub and/or 3. The contact listed on the doku.pub website. Cloudflare INC's Abuse Service noted that an IP address lookup for a Clouflare customer website will show Clouflare IP addresses because it is a pass-through network. However, the actual site is hosted at the hosting provider listed above and if the hosting provider has any questions, they are asked to be contacted directly regarding this site. Due to the attempted abuse of their complaint reporting process, they will only provide doku.pub's IP address to the hosting provider if contacted directly at abusereply@cloudflare.com.

On August 11, 2022, the author Eugeniu Turuta sent a new notification to the defendant company Clodflare. Inc. At the same time Cloudflare Inc. confirmed the receipt of the notice and

explained, that it offers network service solutions, including pass-through security services, is a content distribution network (CDN), that is, of data transmissions and recording services. Due to the broadcast nature of its services, the Company's IP addresses appear in WHOIS and DNS records for websites that use Cloudflare. Cloudflare cannot remove material from the Internet hosted by others.

Submitting this legal action against the company Cloudflare INC, the plaintiffs Turuta Eugeniu and Turuta Radu have requested/with subsequent clarifications/ the finding of the infringement of the author's patrimonial rights of the author Turuta Eugeniu and the copyright holder Turuta Radu for the exploitation of the work (book) "5000 integrated circuits power audio amplifiers" 2008 edition, through the website https://doku.pub, responsible company Cloudflare INC; arising from the size of the author's remuneration (sale price) for each copy of the book (work), the copyright that is infringed and the number of illegal exploitations, in accordance with art. 63 para. (2) lit. b) of Law 139 of 02.07.2010, for the infringenet of the author's patrimonial rights of the author Turuta Eugeniu and the copyright holder Turuta Radu (the exclusive right to exploit the work, including through reproduction, import, distribution and making it available interactively), to be collected from the account of the company Cloudflare INC for the benefit of the author Turuta Eugeniu and the copyright holder Turuta Radu the lost income incurred: for the book "5000 integrated circuits power audio amplifiers" 2008 edition: 79804 distributions x 16 euros = 1276864 euros.

Being invested with the trial of the case on the merits, the Chisinau Court/Centru headquarters/ by the decision of June 9, 2022, rejected the action as unfounded.

Verifying the legality of the disputed disposition act, through the prism of the arguments invoked and the materials in the file, in conjunction with the rules of substantive and procedural law applicable to the resolution of the given case, the Panel considers that the conclusions of the trial court, set forth in the judgment, are unfounded, resulting from the incorrect assessment of the circumstances of the case and the erroneous interpretation of the rules of material law, a fact that constitutes grounds for annulment of the pronounced decision.

In support of the given opinion, the provisions of art. 121 of the Civil Procedure Code, which stipulates that the court retains for examination and research only the relevant evidence that confirms, combats or questions the conclusions regarding the existence or non-existence of circumstances, important for the fair resolution of the case.

According to art. 130 para. (1)-(3) of the Civil Procedure Code, the court assesses the evidence according to its intimate conviction, based on the multi-aspect, complete, impartial and direct investigation of all the evidence in the file as a whole and their interconnection, guided by the law. No kind of evidence has a predetermined probative force for the court without their assessment. Each piece of evidence is assessed by the court regarding its relevance, admissibility, veracity, and all the evidence as a whole, regarding their mutual connection and sufficiency for the resolution of the case.

The college notes that the trial court based its decision to dismiss the action on the response provided by the defendant company Cloudflare INC, which advised that it is a network provider that provides a reverse proxy service, pass-through security, is not a provider of hosting, do not control the content of their customers. It indicated the accepted URLs on http://radiomaster.com.ua: http://radiomaster.com.ua/9133-active-smd-semiconductor-component-marking-codes.html; informing that the hosting provider is BESTHOSTING-AS, with abuse contact details: abuse@besthosting.ua.

At the same time, Cloudflare, Inc.'s Abuse Service confirmed that it received the copyright infringement complaint through doku.pub, reiterating the same claims that Cloudflare, Inc. is a network provider which provides a reverse proxy service, pass-through security, is not a hosting provider, does not control the content of their customers. It indicated the supported URLs on doku.pub:        https://doku.pub/documents/5000-integrated-circuits-power-audio-amplifiers-data-bookpdf-5lw299zr4elj; informing that the hosting provider is OVH, with abuse contact details: abuse@ovh.net. The petitioner was informed that the company's customers were notified of the report, but also that the report was sent to the responsible hosting provider. At the same time, he was informed that he can direct the report to: 1. The provider where doku.pub is hosted; 2. The

owner listed in the WHOIS record for doku.pub and/or 3. The contact listed on the doku.pub website. Cloudflare, Inc.'s Abuse Service noted that an IP address lookup for a Cloulflare customer website will show Cloulflare IP addresses because it is a pass-through network. However, the site itself is hosted at the hosting provider listed above and if the hosting provider has any questions, they are asked to be contacted directly regarding this site. Due to the attempted abuse of their complaint reporting process, they will only provide doku.pub's IP address to the hosting provider if contacted directly at abusereply@clodflare.com.

At the same time, the trial court indicated that Turuta Eugeniu noted that since Cloudflare does not have the capacity to remove content from the website, it is its practice to send complaints of abuse to entities such as the hosting provider and/or the owner of the website to track them by checking the option: the report should be sent to the website hosting provider, and the option; to be forwarded the report to the owner of the website.

The College attests to the incorrectness of the conclusions of the trial court and, as a consequence, the unfoundedness of the given solution.

In this segment, the College notes that Cloudflare, Inc. is a US company that provides content delivery services, security and distributed internet domain name services, standing between the visitor and the Cloudflare user's hosting provider, acting as a proxy vice versa for internet sites. The same online encyclopedia Wikipedia describes Internet service providers (service-providers) as companies or organizations that offer connection and access to the Internet and services. They are often called "ISPs". the initials of the English name Internet Service Provider. Physical access to the Internet can be via dial-up phone line, leased line access, ISDN phone line, ADSL phone line, cable (TV), radio, GSM mobile phone system, mobile phone system UMTS, satellite, etc. The services offered can be Internet transit services, domain name registration, colocation, etc.

The company Cloudflare Inc does not provide data transmission services over the internet to the https://doku.pub website, but it does provide data transmission services between the https://doku.pub website and the end users, and this fact is confirmed by Cloudflare Inc., which claims to be a pass-through network. However, only information or data can pass through a network, because physical objects cannot pass through the network.

The appellant attached two judgments of the courts of the European Union regarding Cloudflare Inc to the appeal request.

Thus, in case 1-6 U32/20, Universal Music vs Cloudfare on October 9, 2020 OLG Koln (Supreme Court of Koln, Federal Republic of Germany) confirmed the blocking order, which compels Cloudflare (the defendant) to prevent third parties from making available a music album to the public through certain websites and domain name servers. Cloudflare was also ordered to provide Universal Music (the plaintiff) with information about the name and address of the website operator. In reaching this conclusion, the Supreme Court held that Cloudflare did not take adequate steps to stop the infringing activities that Ioc through its content delivery network (CDN) and DNS (name server of domain).

The Supreme Court in Koln reasoned that the defendant's appeal was unfounded and that the defendant did not object to the regional court's assumption that, as a CDN service provider, it was jointly responsible for making the music album in question publicly accessible via the website web ddlmusic.to.

According to the Court, despite the fact that the defendant itself did not operate the website and did not set the hyperlinks, it had contractually taken over the role of website operators to act as a CDN server for the website and therefore contributed to adequately to the causal violation of the law. This led to liability for trespass as a nuisance. For the Court, the defendant's contribution was that it intervened in the data traffic between the client's website and users, so that all internet traffic to and from the client's website circulated through the defendant's server network. The activation of the defendant's server was therefore sufficiently causal for the illegal public access to the music album in question through the client's website.

Also the Court noted that since the defendant's business model was initially neutral from an objective point of view and desirable from a social point of view, a general obligation to audit and monitor the content of its customer domains would be disproportionate. However, the defendant

had specific knowledge of the illegal activity and, from that moment on, was required to refrain from 4 contributing to the illegal activities. For 8 months, the defendant did not react and, therefore, an injunction was confirmed.

In ordinance no. 42163/2019 R.G. Sky Italia, Lega Serie A vs. Cloudflare Inc. and others, on October 5, 2020 the Court of Milan (Republic of Italy) confirmed a dynamic blocking order ordering the blocking of the current and future domain names and IP addresses of several Internet Protocol Television (IPTV) services for the distribution illegal audiovisual content. The main Italian Internet Service Providers (ISPs) were involved in the decision, along with hosting provider "OVH" and content delivery network (CDN) operator "Cloudflare Inc.". While Cloudflare Inc. argued that it cannot be held liable for hosting content that infringes copyright, the Court considered that this service qualifies as an intermediary under Article 156 et seq. of the Italian Copyright Law (implementing Article 8 paragraph (3) of Directive 2001/29/EC), against which an order could be issued, regardless of any personal liability. The court also clarified the scope of the dynamic blocking order, inviting rights holders to notify service providers of new IP addresses and domains to extend the blocking order to cover future infringements.

Cloudflare Inc. argued that the Court has no jurisdiction in this case. It also claimed that it was only providing a transient data storage service and therefore could not be held responsible for directly hosting the infringing content. The court rejected the defendant's claims. first of all, the Court specified that his behavior "could facilitate, through the simple activity of storing static data, the activity of third parties who infringe copyright". Secondly, the Court ruled that an injunction could be issued against Cloudflare Inc and others under Article 156 of the Italian Copyright Law and Article 669 bis et seq. of the Italian Code of Civil Procedure. It also emphasized that the classification between providers of hosting, caching and simple data transmission services is irrelevant, provided that the possibility of issuing an injunction against an intermediary based on the above provisions does not depend on the liability of the intermediary for the (alleged) infringement of copyright.

In this vein, analyzing the materials of the case and referring them to the legal provisions, the court finds that, by reproducing the content of the works (books) in dispute, without the consent of the authors, there has been a violation of the patrimonial copyright of the plaintiffs.

At the same time, the court critically appreciates the defendant's argument that, it is a company that provides cyber security services and is not responsible for the content transmitted through the company's network, or Cloudflare Inc. provides transmission services, including being an Internet provider, which has the possibility technique to block access to the work in dispute and which did not execute the requirements of the author of the work in dispute regarding the blocking of the work, respectively the Panel concludes that the latter, through its inaction, bears responsibility for the infringement of the plaintiffs' copyright.

Therefore, based on the rules mentioned above and the circumstances of the case, the Judicial Board will admit the plaintiffs' request and will find the violation by Cloudflare INC of the copyright of the author Turuta Eugeniu and the copyright holder Turuta Radu when exploiting the work (book) "5000 integrated circuits power audio amplifiers" 2008 edition; via the website https://doku.pub.

According to art. 19 para. (1), (2) Civil Code, under the terms of the law, the Face, whose right or legitimate interest are broken, can require according to the law of the full recovery caused to it with respect thereto property or non-property damage. property damage is understood as expenses which the restrained person made or will shall make for recovery violated the right or legitimate interest, destruction or damage of its property (actual damage), and also uncollected profit which this person would receive if its right or legitimate interest were not broken (lost profit).

According to art. 1998 para. (1) Civil Code, the one who acts towards another illegally, with guilt is obliged to repair the patrimonial damage, and in the cases provided by law, also the moral damage caused by action or omission.

According to art. 63 para. (2) from Law no. 139 regarding copyright and related rights, When the judicial authorities set the damages, they shall take into account the necessity to: a) recover the losses, including the lost revenue, incurred by the injured party; b) surrender any unfair profit made

by the infringer; c) pay a compensation of between 500 and 500.000 Moldovan Lei for each infringed right.

In the case, the College held that the plaintiffs requested the collection from the account of the company Cloudflare INC for the benefit of the author Turuta Eugeniu and the copyright holder Turuta Radu of the lost income incurred: for the book "5000 integrated circuits power audio amplifiers" 2008 edition: 79804 distributions x 16 euros = 1276864 euros, which in the opinion of the appeal court is fair and proportionate to the damage caused.

According to art. 65 of Law no. 139 regarding copyright and related rights, In an infringement proceeding, the judicial authorities may order, at the request of the applicant and at the expense of the infringer, appropriate measures for the dissemination of the information concerning the decision, including displaying the decision and publishing it in full or in part..

In the given context and through the prism of the provisions of the above-mentioned legal norms, the College considers the claim of the plaintiffs Turuta Eugeniu and Turuta Radu to oblige the defendant/respondent Cloudflare INC to publish at its own expense on its website https://www.cloudflare.com the decision full court in English for 6 months.

With reference to court costs, the court of appeal highlights the following aspects.

According to art. 82 of the Civil Procedure Code, the court costs are composed of the state tax and the costs of judging the case.

At the same time, in accordance with art. 85 para. (1) lit. a) Civil Procedure Code, the plaintiffs are exempted from the state fee for the trial of civil cases in actions arising from copyright and related rights, from the right over inventions, designs and industrial models, plant varieties, topographies of integrated circuits, such as and from other intellectual property rights.

According to art. 94 para. (1) of the Civil Procedure Code, the court obliges the party that lost the case to pay, upon request, the court costs to the party that won the case. If the claimant's action was partially accepted, he is compensated for court costs in proportion to the accepted part of the claims, and to the defendant - in proportion to the rejected part of the claimant's claims.

According to art. 98 para. (1) of Civil Procedure Code, the expenses related to the trial of the case, borne by the court, as well as the state tax, from which the plaintiff was exempted from payment, shall be collected from the defendant's budget in proportion to the admitted part of the action if the defendant is not exempted payment of court costs.

Therefore, taking into account the fact that the action of the appellant/plaintiff was admitted in full, the latter being exempt, by virtue of the law, from paying the state tax when filing the action and the appeal request, the appeal court considers it necessary to collect from Cloudflare's account " INC for the benefit of the state the state fee in the amount of 25100/twenty five thousand one hundred/ MDL for the examination of the application in the court of first instance and the amount of 18825/eighteen thousand eight hundred twenty five/ MDL, for the examination of the appeal application.

Finally, for the reasons described and previously stated, given that the circumstances of the case were established by the first instance, but were assessed incorrectly, as well as the rules of substantive law were incorrectly applied, and additional verification of evidence is not necessary , the College comes to the conclusion to admit the appeals declared by Turuta Eugeniu and Turuta Radu, to set aside the decision of the Chisinau Court /Centre headquarters/ of June 9, 2022 and to pronounce a new decision to fully admit the claims submitted by Turuta Eugeniu and Turuta Radu to " Cloudflare" INC regarding copyright protection.

Based on the indicated and in accordance with the provisions of art. Art. 385 lit. c) and 389-390 Code of Civil Procedure College, -

**d e c i d e s:**

Accepts the appeals declared by Turuta Eugeniu and Turuta Radu.

Cancel the decision of the Chisinau Court /Centru headquarters/ of June 9, 2022, delivered in the context of the civil case filed on the request for summons submitted by Turuta Eugeniu and Turuta Radu to "Cloudflare" INC regarding the defense of the author's patrimonial rights and, for that reason, renders a new decision by which:

Admits the summons submitted by Turuta Eugeniu and Turuta Radu to "Cloudflare" INC regarding the defense of copyright patrimonial rights.

It is noted the copyright infringement of the author Turuta Eugeniu and the copyright holder Turuta Radu has been found when exploiting the work (book) "5000 integrated circuits power audio amplifiers" 2008 edition through the website https://doku.pub, responsible company Cloudflare, Inc.

Collect from the account of the company Cloudflare" INC for the benefit of Turuta Eugeniu and Turuta Radu the lost income incurred: For the book "5000 integrated circuits power audio amplifiers" 2008 edition: 79804 capitalizations x 16 euros = 1276864 (one million two hundred seventy six thousand eight hundred sixty four) euros.

Obliges Cloudflare, Inc. to publish at its own expense on its website https://www.cloudflare.com the full judgment in English for 6 months.

Collect from the account of the company Cloudflare INC for the benefit of the state the state tax in the amount of 25100 /twenty five thousand one hundred/ MDL for the examination of the application in the court of first instance and the amount of 18825 /eighteen thousand eight hundred twenty five/ MDL, for the examination appeal request.

The decision is final and enforceable from the date of adoption, but with the right of appeal to the Supreme Court of Justice within two months from the communication of the full decision, through the Supreme Court of Justice.

| | | |
|---|---|---|
| **The chairman of the meeting** | | |
| **Judge** | /signature/ | **Ana Panov** |
| **Judges** | /signature/ | **Marina Anton** |
| | /signature/ | **Vitalie Cotorobai** |

The copy corresponds to the original

Chisinau Court stamp    Decision definitive on the date of  29.06.2023

| | | |
|---|---|---|
| Judge | /signature/ | E. Culinca |
| Specialist | /signature/ | D. Donighevici |

| | |
|---|---|
| *Subsemnata, Iovu Alina, traducător autorizat în limba engleză, certific autenticitatea traducerii cu textul înscrisului autentic, care a fost efectuată de către mine la data de 11.11.2023* | *The undersigned,   Iovu Alina , certified translator in English, certify the authenticity of the translation of the authentic text of the document, which has been signed by me  11.11.2023* |

*Stamp: Iovu Alina, Certified translator and interpreter in English and Italian languages. Authorizations Series AT, AI no. 47 of 22.02.2010*
*Semnătura traducătorului*
*Translator's signature*

Exhibit B

Dosarul nr. 2-21064/2020

## TITLU EXECUTORIU



### Judecătoria Chişinău, sediul Centru

în temeiul deciziei Curţii de Apel Chişinău  din 29 iunie 2023, în cauza civilă la cererea de chemare în judecată înaintată de înaintată de Turuta Eugeniu şi Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor, prin care  acţiunea a fost respinsă

### Curtea de Apel Chişinău a decis:

Încasează   din contul   companiei Cloudflare" INC în beneficiul lui Turuta Eugeniu şi Turuta Radu venitul ratat suportat: Pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 79804 valorificăriX16 euro = 1276864 (un milion două sute şaptezeci şi şase mii opt sute şaizeci şi patru) euro.

Hotărârea a devenit definitivă/irevocabilă la data de _____2 8 · 06  2 3_____.

Titlul executoriu a fost eliberat la _____2 8 · 12  2 3 Culg_____.

Se explică că, conform art. 16 alin. (1), (2) Cod de  procedură civilă, hotărârile, încheierile, ordonanţele şi deciziile judecătoreşti definitive, precum şi dispoziţiile, cererile, delegaţiile, citaţiile, alte adresări legale ale instanţei judecătoreşti, sunt obligatorii pentru toate autorităţile publice, asociaţiile obşteşti, persoanele oficiale, organizaţiile şi persoanele fizice şi se execută cu stricteţe pe întreg teritoriul Republicii Moldova. Neexecutarea nemotivată a actelor judecătoreşti, dispoziţiilor, cererilor, delegaţiilor, citaţiilor, altor adresări legale, precum şi lipsa de consideraţie faţă de judecată, atrag răspunderea prevăzută în prezentul cod şi în alte legi.

Judecător _____ **Eugenia Culinca**

Grefier _____ **Aurelia Cemîrtan**

**Adresa creditorului:**
*Radu  Turuta, născut la 20 decembrie 1972,  IDNP 0971312013074, domiciliat în municipiul Chişinău, bulevard Constantin Negruzzi 5, apartamentul 15/ domiciliu secundar Canada, Ontario, Richmond Hill, L4E 4Z7, Timber Valley Avenue, 130.*

**Adresa debitorului:**
**Cloudflare" INC,** *cu sediul în  Statele Unite ale Americii, San Francisco, St.Townsend 101, CA 94107.*

| APOSTILLE | |
|---|---|
| **(Convention de La Haye du 5 octobre 1961)** | |
| **1.Statul**<br>Coutry/ Pays: | Republica Moldova |
| **Prezentul act oficial**<br>This public document/ Le present act public | |
| **2. a fost semnat de către**<br>has been signed by<br>a été signé par | Culinca Eugenia |
| **3. în calitatea sa de**<br>acting in the capacity of<br>agissant en qualité de | Judecător |
| **4. şi poartă sigiliul / ştampila**<br>bears the seal/stamp of<br>est revêtu du sceau / timbre de | Judecătoria Chişinău, sediul Centru |
| **Confirmat**        Certified / Attesté | |
| **5. la Agenţia Resurse Informaţionale Juridice**<br>at/à | **6. pe data 11-01-2024**<br>the / le |
| **7. de către Grate Elena**<br>by/par | |
| **8. cu nr. ARIJWLE5VPIQUMAZO**<br>No<br>sous no | |
| **9. Nu se aplică**<br>Not applicable<br>Pas aplicable | **10. Semnătura digitală:**<br>Digital signature:<br>Signature numérique: |

Această Apostilă certifică autenticitatea semnăturii, calitatea în care semnatarul a acţionat şi, dacă este cazul, identitatea sigiliului sau a ştampilei.
Această Apostilă nu certifică conţinutul documentului pentru care a fost emis
[Utilizarea acestei apostile nu este valabilă în Republica Moldova]
[Această apostilă este semnată digital şi poate fi verificată la următoarea adresă: www.apostila.gov.md]

Codul de siguranţă: 1001886586843967

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears.
This Apostille does not certify the content of the document for which it was issued.
[This Apostille is not valid for use anywhere within Republic of Moldova ]
[This Apostille is digitally signed and can be verified on the following address: www.apostila.gov.md]

Security code: 1001886586843967

Cette Apostille atteste uniquement la véracité de la signature, la qualité en laquelle le signataire de l'acte a agi et, le cas échéant, l'identité Pdu sceau ou timbre dont cet acte public est revêtu.
Cette Apostille ne certifie pas le contenu de l'acte pour lequel elle a été émise.
[L'utilisation de cette Apostille n'est pas valable en République de Moldova]
[Cette Apostille est signée numérique et peut être vérifiée à l'adresse suivante: www.apostila.gov.md]

Code de sécurité: 1001886586843967



Pagina 1 din 1



Digitally signed by Grate Elena
Date: 2024.01.11 09:11:53 EET
Reason: MoldSign Signature
Location: Moldova

Dosarul nr. 2-21064/2020

## TITLU EXECUTORIU



### Judecătoria Chișinău, sediul Centru

în temeiul deciziei Curții de Apel Chișinău din 29 iunie 2023, în cauza civilă la cererea de chemare în judecată înaintată de înaintată de Turuta Eugeniu și Turuta Radu către „Cloudflare" INC cu privire la apărarea drepturilor patrimoniale de autor, prin care acțiunea a fost respinsă

### Curtea de Apel Chișinău a decis:

Încasează din contul companiei Cloudflare" INC în beneficiul lui Turuta Eugeniu și Turuta Radu venitul ratat suportat: Pentru cartea „5000 integrated circuits power audio amplifiers" 2008 edition: 79804 valorificăriX16 euro = 1276864 (un milion două sute șaptezeci și șase mii opt sute șaizeci și patru) euro.

Hotărârea a devenit definitivă/irevocabilă la data de ___29.06.23___

Titlul executoriu a fost eliberat la ___28.12.23 Culș___

Se explică că, conform art. 16 alin. (1), (2) Cod de procedură civilă, hotărârile, încheierile, ordonanțele și deciziile judecătorești definitive, precum și dispozițiile, cererile, delegațiile, citațiile, alte adresări legale ale instanței judecătorești, sunt obligatorii pentru toate autoritățile publice, asociațiile obștești, persoanele oficiale, organizațiile și persoanele fizice și se execută cu strictețe pe întreg teritoriul Republicii Moldova. Neexecutarea nemotivată a actelor judecătorești, dispozițiilor, cererilor, delegațiilor, citațiilor, altor adresări legale, precum și lipsa de considerație față de judecată, atrag răspunderea prevăzută în prezentul cod și în alte legi.

Judecător ___Cep. Culinca___ Eugenia Culinca

Grefier ___Smily___ Aurelia Cemîrtan

**Adresa creditorului:**
Radu Turuta, născut la 20 decembrie 1972, IDNP 0971312013074, domiciliat în municipiul Chișinău, bulevard Constantin Negruzzi 5, apartamentul 15/ domiciliu secundar Canada, Ontario, Richmond Hill, L4E 4Z7, Timber Valley Avenue, 130.

**Adresa debitorului:**
Cloudflare" INC, cu sediul în Statele Unite ale Americii, San Francisco, St.Townsend 101, CA 94107.

*Transalte for romanian to english*

**EXECUTIVE TITLE**
**Chisinau Court, Centru office**

Based on the decision of the Chisinau Appeal Court from June 29, 2023, in the civil cause the writ of summons requested by Eugeniu Turuta and Radu Turuta to "Cloudflare" INC regarding the defence of copyright rights, on which the action was dismissed

**Chisinaiu Appeal Court decided:**

Receive from "Cloudflare" INC company's account to the benefit of Eugeniu Turuta and Radu Turuta lost income incurred as following: For the book "5000 integrated circuits power audio amplifiers" 2008 edition: 79804 redeems X 16 EUR = 1276864 (one million two hundred seventy six thousand eight hundred sixty four) Euro.

The decision became final/irreversible on the date of: <u>June 28, 2023</u>

Writ of execution was released on the date of: <u>December 20, 2023</u>

As explained, as per article 16, paragraph (1), (2) : the Final decisions, determinations and resolutions of degrees of jurisdiction, and also orders, requirements, orders, the agenda, other legal appeals of degree of jurisdiction are obligatory for all bodies of the public power, public associations, officials, the organizations and physical persons and is subject to strict execution in all territory of the Republic of Moldova. Unreasonable non-execution of court resolutions, orders, requirements, orders, agenda, other legal addresses, as well as disrespect for court attract the responsibility provided by this code and other laws.

    Judge     /signature/     Eugenia Culinca

    Registrar    /signature/     Aurelia Cemirtan

**Creditor Address:**
**Radu Turuta**, born December 20, 1972, IDNP 0971312013074, home address: Moldova, Chisinau Municipality, 5 Constantin Negruzzi Boulevard, app. 15. Secondary address: Canada, Ontario, Richmnd Hill, L4E 4Z7, 130 Timber Valley Avenue

**Debtor Address:**
**"Cloudflare" INC**, headquarter address: San Francisco, St. Townsend 101, CA, 94107, USA

| | |
|---|---|
| *Subsemnata, Rus Cristina, traducător autorizat în limba engleză, certific autenticitatea traducerii cu textul înscrisului autentic, care a fost efectuată de către mine la data de 03.01.2024* | *The undersigned,  Rus Cristina , certified translator in English, certify the authenticity of the translation of the authentic text of the document, which has been signed by me 03.01.2024* |

*Stamp: Rus Cristina, Certified translator in Italian and English languages. Authorizations Series AT no. 88 of 22.02.2010. Authorizations Series AT no. 298 of 28.07.2011.*

*Semnătura traducătorului*
*Translator's signature*  

# EXHIBIT 2

**REGISTERED AGENT**
S O L U T I O N S   I N C
A **LEXITAS** COMPANY

**Registered Agent Solutions, Inc.**
*Corporate Mailing Address*
5301 Southwest Parkway, Suite 400
Austin, TX  78735
**Phone:** (888) 705-7274

## SERVICE OF PROCESS RECEIPT

### NOTICE OF CONFIDENTIALITY

This notice and the information it contains are intended to be a confidential communication only to the individual and/or entity to whom it is addressed. If you have received this notice in error, immediately call our SOP Department at (888) 705-7274.

**RE:**

This receipt is to inform you that Registered Agent Solutions, Inc. has received a Service of Process on behalf of the above-referenced entity as your registered agent and is hereby forwarding the attached document(s) for your immediate review. A Summary of the service is shown below; however, it is important that you review the attached document(s) in their entirety for complete and detailed information.

**SERVICE INFORMATION**
Service Date:
Service Time:
Service Method:

**CASE INFORMATION**
Case Number:
File Date:
Jurisdiction:
Case Title:

**AGENCY / PLAINTIFF INFORMATION**
Firm/Issuing Agent:
Attorney/Contact:
Location:
Telephone No.:

**RASi REFERENCE INFORMATION**
Service No.:
RASi Office:
Rec. Int. Id.:

**ANSWER / APPEARANCE INFORMATION**

**DOCUMENT(S) RECEIVED & ATTACHED**

**ADDITIONAL NOTES:**

**Questions?** Should you have any questions or need additional assistance, please contact the SOP Department at (888) 705-7274.

You have been notified of this Service of Process by Insta-SOP Delivery, a secure email transmission. The transmitted documents have also been uploaded to your Corpliance account. RASi offers additional methods of notification including Telephone Notification and FedEx Delivery. If you would like to update your account's notification preferences, please log into your Corpliance account at www.rasi.com.

*Thank you for your continued business!*